(No. 14027.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRVING SCHULMAN, Plaintiff in Error.

*Opinion filed October 22, 1921.*

CRIMINAL LAW—*when new trial will be granted because defendant was not properly defended.* Poor defense by counsel will not justify a reversal of a judgment of conviction which is reasonably supported by the testimony, but where the testimony to sustain a conviction is doubtful and the defendant was deprived of valuable impeachment evidence because his counsel was ignorant of the proper method of laying the foundation for its introduction the judgment will be reversed and the cause remanded for a new trial.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

ARTHUR H. FINK, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was charged by indictment in the criminal court of Cook county with taking indecent liberties with Gertrude Siwinski, a twelve-year-old girl. He pleaded not guilty, was tried, convicted and sentenced to the State reformatory. He has sued out a writ of error to review the judgment, and contends that the evidence did not warrant his conviction and that he did not have a fair and impartial trial because of the court's conduct and rulings during the progress of the trial.

Plaintiff in error (hereafter called the defendant) was eighteen or nineteen years old. He was in the butter and egg business with his father. His business was to solicit trade and sell the butter and eggs. For that purpose he drove a truck. Peter Siwinski was one of his customers. Defendant called at Siwinski's bakery at frequent intervals

to sell goods and also to collect for what he had previously sold. Siwinski and his wife and children, including the twelve-year-old daughter, lived in the building his bakery was in. The front room of the building he occupied was called the store. Back of it was a bed-room and the bakery. A door in the rear of the store connected it with the bed-room and bakery. There was also a window between the store and bed-room through which one could see from the bed-room into the store, which fronted the street. About 2:30 P. M., October 13, 1920, defendant driving his motor truck called at Siwinski's place of business. Gertrude was in the front part of the store placing articles in the front window. Defendant passed through the store into the bakery, where Siwinski and an assistant were at work. He inquired of Siwinski if he wanted to buy any eggs, and Siwinski said he did not. Defendant had a bill against Siwinski for previous sales which he desired to collect but it was not paid. When defendant passed through the store to leave, Gertrude was in the front part of it, near the front door. She was heard to cry out, and her mother, who was not well and was lying on the bed in the bed-room back of the store, came into the store, followed very soon by Siwinski and his helper.

We are of opinion this judgment must be reversed. In brief, the most important testimony was as follows: Gertrude testified, in substance, that when defendant came out of the bakery he offered her ten cents, and when she reached her hand for it threw her on the floor, pulled her dress up and opened his pants; that she tried to get up and called for her father. She testified defendant was on his knees; that he started to tickle her and tried to pull her pants down. She continued to "holler," and her mother came into the store first. She called for her husband. Defendant told the girl's mother nothing was the matter except that the girl called him names. When her father and his helper came defendant went out and drove away on his

truck, Siwinski and his helper following him in another car. The witness stated defendant had given money to her brother at different times when he collected a bill.

Gertrude's father testified his attention was attracted by his wife calling and he went into the store; that when he went in defendant was standing near the front door; that he went out, mounted his truck and drove rapidly away; that witness and his assistant got in a near by car, which was driven by another party, overtook defendant and took him to the police station.

Mrs. Siwinski testified she was lying on the bed in the bed-room and fell asleep. She was awakened by Gertrude's screaming, and looking through the window between the bed-room and the store saw Gertrude. She went into the store and defendant was on his knees and Gertrude was trying to get away. She called for her husband and defendant grabbed for the door and ran away. She said defendant had his pants open; that when he was kneeling by Gertrude while she was on the floor he had his right hand under her clothes and tore them. The front door of the store was principally glass.

Defendant testified he had known the little girl and her family for about four months. He called at their place of business about three times a week to sell eggs. The girl at different times had called him a "Sheeny," and "cheap rotten egg man." When he called there October 13 Siwinski owed him $11 but did not pay it, and as he had refused four times before to pay the bill defendant was angered. As he was passing through the store to leave, Gertrude asked him for a nickel. He had been in the habit of giving her brother pennies when he collected bills there. He told her he did not collect his bill and would give her nothing. She then called him bad names, whereupon he slapped her in the face and she fell down, began to cry and her mother came out. He wanted no scene with her and walked slowly out, climbed on his truck and started to drive

to his next customer. He was overtaken by a car. The girl's father and his helper were in it, who told him to stop, and he did so, jumped off the truck and said; "What is wrong?" Siwinski asked him why he hit his daughter, and he replied she deserved it. The driver of the car suggested if they had anything against defendant they had better take him to the station. Defendant told them if they had anything against him to get on his truck and tell it to the judge. The three went to the station together. He denied pulling or throwing the girl down, denied kneeling on the floor and tickling her, denied raising her dress, unbuttoning his trousers or taking indecent liberties with her.

Defendant proved by two witnesses, one of whom had been his teacher in the high school, the other a man who had lived more than six years in his neighborhood, that his reputation for truth and moral conduct was good.

Counsel for defendant sought to show by witnesses that all three of the Siwinskis had made statements out of court after but about the time the alleged offense was committed which were at variance with other statements made by them out of court as to what occurred and at variance with their testimony on the trial. Counsel who tried the case in the criminal court is not the same counsel appearing here, and he appears not to have been familiar with the rules of evidence to make such testimony competent by way of impeachment. He persisted in asking the witness about conversations had with the Siwinskis and what they said. The court attempted to indicate to counsel how he should proceed in such case, but he apparently did not comprehend, and defendant was deprived of the benefit of any testimony of that character, if there was any such testimony that could have been produced by properly laying a foundation. If the Siwinskis had changed the charge in their testimony from a charge of slapping the girl to one of taking indecent liberties defendant was entitled to show it, if he could do so, by pursuing the proper method of exami-

nation. We have held that the fact a person charged with crime was poorly defended will not justify a reversal of the judgment where it is reasonably supported by the testimony. (*People* v. *Barnes,* 270 Ill. 574.) In this case, however, we are impressed, from an examination of the testimony and the facts and circumstances in evidence, that it cannot reasonably be said no other verdict would have been justified than one of guilty under the evidence as it appears in the record. The character of the case and the evidence offered by the People were such that the defendant should have been given every right the law afforded him in establishing his defense. We are not to be understood as holding that he is not guilty, but only that the inconclusive evidence, together with the fact that defendant was not permitted to offer proof, if such proof existed and could have been produced, which was important and material to his defense and to a fair trial, impels us to reverse the judgment in order that he may have an opportunity on a new trial to present in a proper way and have admitted the proof, if it exists, that he did not have the benefit of on his former trial.

This court has frequently held that a judgment in a criminal case will be reversed where the evidence is not sufficient to establish guilt beyond a reasonable doubt and where the jury has acted under a misapprehension or misconception. If it is a fact that the Siwinskis first charged that defendant committed an assault and battery and later changed it to a charge of taking indecent liberties with the girl, proof of the fact might possibly not produce a different result, but a reviewing court cannot say that it would not. At all events, the defendant charged with such a crime is usually at some disadvantage in making his defense and is entitled to present all competent and relevant evidence allowed by law to disprove the charge.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*