STATE, Respondent, vs. HENDERSON, Appellant.

*May 25—December 7, 1937.*

For the appellant there were briefs by *O'Melia & Kaye* of Rhinelander, *Eberlein & Larson* of Shawano, and *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *A. J. O'Melia, R. T. Reinholdt,* and *M. G. Eberlein.*

For the respondent there were briefs by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Leonard F. Schmitt,* special counsel, and oral argument by *Mr. Messerschmidt* and *Mr. Schmitt.*

The following opinion was filed June 21, 1937:

WICKHEM, J.    Defendant is a physician, thirty-one years of age, and married.    He graduated from medical school in

1930, and has ever since practiced medicine and surgery at Tomahawk, Wisconsin. The two counts of the information charged him, respectively, with producing a miscarriage on the persons of Flora Kibler and Ethel Bogie.

Count 1 charges an illegal operation upon Flora Kibler. Flora Kibler was a junior in high school, and in February, 1936, informed her parents that she was pregnant. Her mother purchased some pills, and the girl took them without any effect. The mother then claims to have consulted Dr. Rowe Baker, at Tomahawk, who said that there was nothing he could do. Thereafter, the mother claims to have consulted defendant, who examined the girl, told her that she was pregnant, and agreed to perform an operation for a fee of $100. There is evidence that in accordance with arrangements, the mother took her daughter to the office of defendant at 9 o'clock in the morning on a day about the middle of March, and defendant then performed upon her private parts some sort of an operation with instruments that had the appearance of large shears or scissors; that several days later Flora had pains and other symptoms of miscarriage; and that defendant made one or two trips and gave her treatment, after which she made a normal recovery. Defendant admits that Mrs. Kibler came to his office with Flora and that he examined the latter and found her pregnant, but states that he declined to perform an operation, and advised her to hunt up the boy who was responsible and arrange a marriage. He further testified that on March 27th, he was called to the Kibler home, and the girl at that time was having a miscarriage; that he gave such treatment as was indicated by those conditions. Defendant denied that he at any time used instruments to produce a miscarriage.

With respect to count 2, the testimony of Ethel Bogie was that she was twenty-two years of age; that she had had improper relations with Orville Bogie on May 28, 1936;

that she sought the advice of defendant on or about the 29th of June, and was informed definitely that she was pregnant and that she could have a miscarriage produced. Shortly thereafter, she married Bogie, but the conditions of the parties were such that they determined to separate and did separate on July 6th. She testifies that she returned to the defendant about the middle of July, told him that she had been married, but could not live with her husband, and wished to have the operation performed. She testified that she made an appointment with the defendant for 8 o'clock in the evening; that she went to his office; that the doctor performed an operation upon her private parts with instruments; that three days later she passed some clots of blood and shortly thereafter returned to normal health, and has been completely normal ever since. Defendant denied that he had ever seen or talked to Ethel Bogie, although he had treated her sister at some previous time. The girls who worked in his office denied ever having seen Ethel Bogie at the office.

There can be no serious doubt that the evidence here sustains the verdict with respect to Flora Kibler. Whatever question there may be concerning the sufficiency of the evidence has to do solely with the count relating to Mrs. Bogie. Defendant claims that since sec. 351.22, Stats., relates to the producing of a miscarriage on a pregnant woman, it is essential in a prosecution under that section that pregnancy be established by the same degree of proof that the other elements of the offense are established. It is asserted that the evidence does not sustain the finding that Mrs. Bogie was pregnant, for the reason that the sole basis for a finding of pregnancy is her conclusion from the facts, (1) that she had had improper relations in May; and (2) that she did not have menstrual periods in June and July. It is claimed that, while this is consistent with a pregnant condition, it is not

evidence beyond a reasonable doubt that she was pregnant. The fact that Mrs. Bogie did not have testimonial qualifications in this respect is claimed to be shown by the fact that she told Bogie she was pregnant within a few days after having sexual relations with him, and also before she had missed any of her menstrual periods. It is also claimed that identification of the fetus by her was not of any evidentiary value in view of her unfamiliarity with the subject of her evidence. The contention cannot be sustained. Her symptoms following intercourse with Bogie and those following the alleged operation are open to the inferences of pregnancy and miscarriage, respectively, and it was within the province of the jury to draw such inferences. Thus, we conclude that there was evidence to go to the jury on all the essentials of the offenses charged. It therefore becomes necessary to examine the contention that a new trial should be granted because of certain alleged errors in the trial.

It is contended first that the trial judge erred in instructing the jury that it could base its findings upon the testimony of the two girls if such testimony "appeared to the jury to ring true." This contention is without merit, as will appear from an examination of the entire instruction relative to the two girls. The instruction is as follows:

"It is the rule that the testimony of an accomplice is to be carefully examined and scrutinized and is to be given only such weight and credit as under all the circumstances you believe it fairly entitled to receive. If, however, it appears to you to ring true, then you are entitled to believe it and base your findings wholly or partly upon it."

It will be noted that the sentence objected to comes at the conclusion of a paragraph warning the jury that the Kibler and Bogie girls were, in substance, accomplices, and that their testimony was to be carefully examined and scrutinized. Whether the two girls were technically accomplices is questioned in the briefs, but this we do not consider, because if

they were, this portion of the instruction was right, and if they were not, it was, at most, unduly favorable to the defendant. The principal objection is to the use of the words "appears to you to ring true." It is claimed that this means that the jury may convict if the evidence "sounds" or "appears" to be true, and that this establishes a much lower standard of proof than that beyond a reasonable doubt. It is further claimed that the instruction that the jury might base their findings upon the testimony of the girls "in whole or in part" authorized the jury to disregard the other evidence in the case. We think these objections hypercritical. The expression, "if it appears to ring true" simply means, "if you believe it." The jury had already been fully instructed on burden of proof, and enjoined to consider all the evidence, and the statement that findings might be based upon the testimony of the girls in whole or in part was not an authorization to disregard other evidence in the case. The case is not like *Little v. Superior Rapid Transit R. Co.* 88 Wis. 402, 60 N. W. 705, in which the following instruction was held erroneous (p. 408):

". . . 'There is, when a witness is testifying, an indefinable something that rings of truth, that in spite of and in the face of everything you have a right and should give heed to.' "

In that instruction the objectionable phrases were "in spite of" and "in the face of everything." Those are not present in the instruction objected to.

It is next objected that there was overemphasis in the charge "upon the defendant's interest as a factor to be considered." The instruction was as follows:

"In considering the testimony of the defendant you have a right to consider his great interest in the result of this trial and the temptation which arises under such circumstances to color or distort the facts so as to favor himself. If it appears that any other witness has a personal interest

in the result, you should consider that interest in weighing his testimony."

It is admittedly proper to call attention to the defendant's interest as a consideration in determining the weight or credibility of his testimony, but it is contended that this should be qualified by a further instruction that questions of interest apply to all other witnesses. It appears to us that this is precisely what the court did in the last sentence of the instruction. We conclude that this instruction was not prejudicially erroneous.

It is next contended that the court unduly exalted the testimony of the witness, Mrs. Kibler, to the prejudice of defendant, by its instruction to the effect that Ethel Bogie and Flora Kibler were accomplices whose testimony required special scrutiny, and by completely omitting any reference to Mrs. Kibler, who clearly was an accomplice. It is asserted that this had the effect of telling the jury that Mrs. Kibler's testimony did not need such special scrutiny as did the testimony of the girls. Had an instruction been requested applicable to accomplices with reference to Mrs. Kibler's testimony, it would doubtless have been error to decline to give the instruction. There was no such request, and we are not satisfied that the failure specifically to mention Mrs. Kibler operated to defendant's prejudice.

It is next contended that the trial court committed prejudicial error by failure to instruct the jury to consider only the evidence relating to a particular count in arriving at its verdict on that count. The first answer to this contention is that no request was made for such an instruction. The second is that the evidence was quite short and simple, easy to separate and grasp, and not likely to confuse the jury. The evidence of Mrs. Bogie related to the acts of the defendant with respect to her. That of Mrs. Kibler and her daughter related to the acts of defendant with respect to

the Kibler girl.    We see no likelihood that confusion could arise from the court's failure so to instruct.    Furthermore, the instructions plainly told the jury that defendant was accused of two offenses and specified with sufficient particularity what these offenses were.    The jury were told that the only question was whether in each instance defendant used or employed an instrument, etc., and the jury were informed that before they had a right to find defendant guilty of any crime, each member must be convinced by a full consideration of all the evidence beyond all reasonable doubt that he was guilty.

The next group of objections has to do with the alleged erroneous rejection or admission of evidence.    (1) The admission of testimony by Dr. Baker, to the effect that Mrs. Kibler had consulted him with reference to her daughter's pregnancy and sought to have him procure a miscarriage, is claimed to have been error.    Dr. Baker testified that Mrs. Kibler consulted him about the daughter's pregnancy. There was an objection on the ground that the evidence was immaterial.    This was overruled, the court taking the view that the question appeared to be preliminary.    The question was then asked, "What was the purpose of her visit to you?" No objection was made to this question.    As pointed out in the opinion of the trial court, this question was capable of eliciting a competent and material answer.    The answer was not responsive, the doctor stating that she requested that he commit an abortion and that he refused.    There was no motion to strike this answer.    The answer came in as an unresponsive answer to a proper question, and there being no motion to strike, it stayed in.    This cannot be urged as prejudicial error.

(2) It is claimed that the trial court erred in not allowing defendant to show by the testimony of Orville Bogie that Ethel Bogie had informed him that she could be relieved of

her pregnancy before she ever consulted defendant. This contention is based on testimony of Ethel Bogie that she first consulted the defendant about the 29th of June, and received the information that he was willing to perform an illegal operation. Bogie, to whom Ethel was married on July 2d, was produced by defendant as a witness. Defendant offered to prove that during the early part of June, Ethel had informed Bogie that she had consulted a doctor, and that she could either get married or get rid of the child. This is claimed to have been material because if she had been advised as early as the first part of June that she could have a miscarriage, she must have had this assurance from some person other than the defendant. This evidence had no value except as it tended to impeach Ethel Bogie as a witness. Her testimony had been that she had consulted defendant first, and then made the remark to Bogie that she could either get married or get rid of the child. It is apparent from a reading of the testimony that defendant was permitted to pursue the inquiry sufficiently to get before the jury the contradictory statements of Mrs. Bogie. Defendant was permitted to show the date when Mrs. Bogie made the statement in question to Mr. Bogie, and that served all the purposes that impeachment testimony could properly be permitted to serve. If erroneous, the ruling was not prejudicial.

(3) It is claimed that the trial court erroneously excluded testimony to the effect that an anesthetic was usually given when an operation of this sort was performed. The trial court was correct in excluding this testimony because of the form of the question. The question was whether an anesthetic was usually given "when it is necessary to perform an abortion." The court rejected the evidence for the reason that there was no foundation shown here for any necessity. As framed, the question had application only to

a lawful abortion, and no attempt was made to reframe the question so as to make it applicable to illegal operations.

The next group of objections has to do with remarks or comments by the trial court: (1) During his argument to the jury, defendant's counsel asked the question, "Would it be likely that he [defendant] would perform such an operation, and involve losing his license?" The reference was to sec. 147.20, Stats., which includes within the definition of immoral or unprofessional conduct the procuring, aiding, or abetting a criminal abortion, and which provides that upon the conviction of a licensed physician of a crime involving immoral or unprofessional conduct, the clerk of the court shall file with the board of medical examiners a certified copy of the information and of the verdict and judgment, and upon such filing, the board shall revoke the license or certificate. The trial court stated, "We have no license involved here. The punishment is not a state prison offense. I don't want you to discuss punishment at all." The defendant concedes that it is not proper to mention the particular punishment that may be imposed on the defendant if convicted of the offense with which he is charged, but asserts that it is proper to call attention to the seriousness of the offense, and that the effect of the trial court's comment was, (1) a misstatement of the law in view of sec. 147.20 when he stated that there was no license involved, and (2) the minimizing of the offense in such a way as to take from the jury the feeling of responsibility that would otherwise be theirs if the offense was a more serious one. The contention cannot be sustained. It was manifestly improper for the defendant's attorney to make the argument to which the court addressed this comment. It was literally true that the license is not involved in the case and that the crime is not a state's penitentiary offense. There was no error and no tendency to minimize the offense in the minds of the jury.

(2) It is asserted that the trial court erroneously excluded testimony by the defendant as to the effect of ergotin pills, for the reason that he mistakenly supposed that there was no testimony that any such pills had been used by Flora Kibler. There are two answers to this: First, from other witnesses and by other means, the defendant did get into evidence as fully as was necessary the effect of taking pills having a foundation of ergot. Second, the trial court was not mistaken as to the state of the evidence. Mrs. Kibler testified to the following leading question: "You got ergotin pills?" Answer, "Yes." "That is what you got from the drug store?" "I don't know what they were called." This is hardly a foundation to go very deeply into the subject of the composition of ergotin pills. However, the court did permit the defendant to introduce testimony as to their composition and effect.

(3) On cross-examination, a medical witness for the state was asked whether it would take fifteen or twenty minutes to perform an operation such as is claimed defendant performed on these two girls. The trial court stated that there was not even a guess in the testimony that it took twenty minutes. It is claimed that this is error because each girl testified that she was on the operating table about fifteen or twenty minutes. The reasoning of the defendant is that if this were an operation that took fifteen or twenty minutes, it would be extremely unlikely that it would be undertaken without an anesthetic; and that since no anesthetic was used, the jury might reasonably disbelieve the testimony of the girls. The state concedes that the court was in error as to the time involved in the operation, but claims that the medical evidence offered by Dr. Freeman was not at variance with that of the girls, since he testified merely that the process of packing the vagina took three or four minutes. This being true, there was before the jury sufficient evidence to make arguable the inference which defendant sought to have drawn.

(4) It is claimed that the court made a comment that was likely to be understood by the jury as disparaging to the credibility of the defendant. The defendant produced a character witness who was asked if he knew the character and reputation of the defendant for truthfulness. The court properly sustained an objection to this form of question, saying, "It has not been attacked yet. You can't *bolster up* a witness in that sort of way, unless there has been an attack." In order to get a proper picture of the situation, the colloquy which followed should also be included. Defendant's counsel: "There is a question here as to whether this man is telling the truth or whether these witnesses are." "Exactly; but the rule is that he is presumed to be truthful until there has been an attack made. There has not been any attack made of this character." It seems to us that the result of this colloquy was favorable rather than prejudicial to defendant. The use of the words "bolster up" may be open to some objection, but, taken in connection with the entire conversation, it is evident that it merely carried the meaning of "support" and did not disparage defendant.

It is next contended that the defendant's counsel upon the trial was either inexperienced or incompetent and for that reason defendant did not have a fair trial. Defendant's counsel had had about fifteen years of experience as an attorney. Under the rule in *Blitstein v. State,* 218 Wis. 356, 259 N. W. 715, we cannot say that there was any ground for a new trial. There were several situations where, speculating after the event, other tactics might seem to have been more helpful to defendant's case. Such observations may quite usually be made after the trial of a jury case and, far from showing incompetency, merely indicate the clarity which comes with retrospect. We discover no substantial right of defendant that was lost by reason of the incompetency of his attorney.

This leaves two matters to consider: One is that the evidence, if sufficient to go to the jury, was nevertheless weak,

and that the cumulative effect of the errors charged ought to warrant a new trial in the interests of justice, even though any one of them would not be considered grounds for a new trial. This contention is largely disposed of by the conclusions heretofore set out with reference to particular errors, all of which, so far, have been held not to be errors or not prejudicial. We appreciate that in sexual offenses of all kinds and grades there is always room for entertaining some misgivings where the evidence is in conflict. Such offenses are not publicly committed. They are difficult to establish conclusively and equally difficult to defend against. There is here, however, nothing in the record upon which to ground a reversal in the interests of justice that is not present in every such case. No motive is shown for perjury on the part of the girls who testified to the acts of defendant. It is urged by defendant that it is so unusual for girls, upon whom with their consent miscarriages had been produced and who have had no untoward results therefrom, to appear in the role of prosecuting witnesses that their stories are open to the suspicion that they are not true, but are in support of a prosecution inspired by some undisclosed person for improper motives. This appears to us to be a rather strained inference. Had a motive for falsifying been shown, that would be a circumstance of considerable importance in determining the weight to be given to the testimony. The contention that the lack of a motive tends to discredit the testimony is not sustainable, since that circumstance normally tends to support credibility.

We now come to the most serious question in the case, and this for reasons of convenience is now considered out of its usual order. In the court's instructions it was said: "The issues here are very simple. *It is undisputed that at the times alleged each of these young women was pregnant and each suffered a miscarriage,* and *the only question* is whether in

each instance the defendant used or employed an instrument or instruments upon the person of the woman with intent to procure the miscarriage." With respect to the Kibler girl this statement is true. Defendant himself testified to her pregnancy and to the fact of her having had a miscarriage, although he disclaimed any part in it. Hence, as to her, it was proper to say that the only question was the defendant's connection with the miscarriage. In the Bogie case the situation is quite different. There the fact of her pregnancy, as well as the fact of her having had a miscarriage, is sufficiently established to go to a jury, but neither of these facts can be considered to be uncontrovertible or to fall without the field of dispute.

It will be noted that the instruction does not state that the evidence is undisputed that each girl was pregnant, but rather that it is undisputed that they were pregnant. While the evidence of Mrs. Bogie was not disputed, principally because of the nature of the defense, to wit, that defendant had never seen or consulted with or treated Mrs. Bogie at all, it was still open to a jury, even though it believed all of her testimony, to entertain reasonable doubt that she ever was pregnant or that she had in fact had a miscarriage. Her pregnancy is established principally by her own conclusions from symptoms that she describes, and the fact of miscarriage is established principally by her description of what transpired after instrumentation by defendant. The effect of the instruction was to remove from the jury any question concerning the fact of her pregnancy or the fact of her miscarriage, the jury being expressly told that the only question related to the conduct of defendant. We entertain no doubt that this constituted error in so far as the count concerning Mrs. Bogie was involved. We are equally certain that the instruction could not have operated prejudicially to the defendant upon the first count involving the Kibler girl. As to the

Kibler girl, there was no question of her pregnancy or the fact of a miscarriage having occurred. The question is whether this instruction was prejudicially erroneous with respect to count 2. While erroneous, it is by no means clear that its effect was prejudicial. Mrs. Bogie testified to intercourse with Bogie, to the missing of two immediately subsequent menstrual periods, to the fact that she resorted to defendant for advice and was pronounced pregnant, to the fact that the defendant thereafter performed upon her the operation heretofore described, and to the fact of passing of what appeared to her to be a fetus within a short time thereafter. It is extremely difficult to suppose that a jury, having believed this testimony, would be likely to conclude that both defendant and Mrs. Bogie were mistaken as to the fact of pregnancy. Having accepted the testimony of Mrs. Bogie, her own conclusions with respect to the symptoms of pregnancy and miscarriage would be strengthened and supported by those of the defendant evidenced by his advice and his conduct in performing the operation. For this reason, it is our conclusion that, while the instruction was erroneous, it cannot be said that it affirmatively appears to have operated to the prejudice of the defendant. For the foregoing reasons, it is the conclusion of the court that the judgment of conviction must be affirmed.

*By the Court.*—Judgment affirmed.

FRITZ and NELSON, JJ., dissent.

A motion for a rehearing was denied, without costs, on December 7, 1937.