ESKRA, Plaintiff in error, v. STATE, Defendant in error.*

*November 5—November 30, 1965.*

---

* Motion for rehearing denied, without costs, on February 1, 1966.

For the plaintiff in error there was a brief and oral argument by *Bruce Gillman* of Madison.

For the defendant in error the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *Michael Torphy*, district attorney of Dane county.

HEFFERNAN, J.   Eskra was arrested in the early morning hours of July 11, 1964, by the police of the village of Monona. An automobile was discovered with a number of TV sets and radios plainly visible within it. The officer checked a nearby TV store and found evidences of a break-in. A search of the vicinity revealed the defendant, who was immediately arrested. Later in the day, a warrant to search his car was issued. Eskra was brought before the magistrate on the afternoon of July 13th. The complaint was read to him, and he was thereupon formally charged with two felonies, the entry of a building with intent to steal contrary to sec. 943.10, Stats., and the felonious theft of television and radio sets at the same address in a value in excess of $100, but less than $2,500. He was advised that he had the right to

counsel, and that, if he was indigent, counsel would be appointed for him if he desired. Eskra stated that he desired counsel. The court entered a plea of not guilty to each count of the complaint, set bail, and advised the deputy district attorney to determine whether or not the defendant was indigent. During the colloquy regarding the appointment of counsel, Eskra put a motion before the court to suppress and dismiss on the ground of the illegal search and seizure of his car. This motion was taken under advisement by the judge. Eskra stated that he had $80 in cash and that he could obtain more. The judge advised him that he could secure his own counsel if he wished and had sufficient funds. The preliminary examination was set for July 21st.

The defendant on that date appeared before the court without counsel and advised the judge that, although he had talked to an attorney, he did not have sufficient funds to retain him. The court thereupon advised Eskra that, if he was indigent, counsel would be appointed for him. The deputy district attorney advised the court that, ". . . we can't proceed on a preliminary [hearing] until he has counsel unless he waives preliminary hearing." The deputy district attorney advised the court that the state had material witnesses in the courtroom and was prepared to proceed with the hearing. The judge, however, then stated he would continue the matter for ten days so that the prisoner could secure counsel.

At this point, the record shows the following:

"Mr. McCallum: One moment, Your Honor. (Addressing defendant Eskra) What did you say?

"(Discussion between Mr. McCallum and defendant Eskra off the record)

"Your Honor, Mr. Eskra just requested that he would like to talk to me for a few minutes. If we could have maybe a five minute adjournment or so I would be glad to talk to him.

"The Court: I have another matter at 2:30. I will recess and you can come back in after the 2:30 hearing.

"(Recess taken)

"LATER:

"(Mr. McCallum, Deputy District Attorney, and defendant Benjamin C. Eskra present in the courtroom)

"The Court: Mr. McCallum?

"Mr. McCallum: Your Honor, at Mr. Eskra's request, in the last five or ten minutes or so he and I have had a conference in the conference room off the courtroom here, and he indicated to me he wanted to know what was transpiring and if it was his trial, and I indicated to him it was not, that it was a preliminary hearing, and that the purpose of a preliminary hearing was to determine first if a crime was committed and, secondly, if there was probable cause to believe that he committed that crime, and if the Court found these two elements that he would then be bound over to circuit court for trial. The procedure was, in essence, what we had discussed. He has indicated to me that he does not want to proceed to trial. He further indicated to me that he wants to change his plea at this time. I was asked if I had a recommendation or did not and I indicated to him that I would not make any statements to him one way or the other regarding what my position would be on it.

"Have I stated it substantially correct, Mr. Eskra?

"Defendant Benjamin Eskra: Yes, sir.

"Mr. McCallum: And he indicated to me he does at this time want to make a statement to the Court.

"The Court: Well, first of all, Mr. Eskra, do you—is it your desire to change your plea?

"Defendant Benjamin Eskra: Yes, sir.

"The Court: Your plea at the present time is not guilty. What do you wish to change it to?

"Defendant Benjamin Eskra: Guilty.

"The Court: All right. You are pleading guilty to the charges listed in the complaint, and on your plea of guilty I adjudge you guilty."

The defendant was advised that he would have to plead to an information. The deputy district attorney had stated that, although the formal information had not been prepared, he would read the provisions of the complaint into the record as the information. Thereupon the defendant waived the reading of the information and pleaded guilty. He was adjudged guilty upon his plea

to the information and sentencing was deferred until the completion of a presentence investigation.

On August 5, 1964, Eskra was brought before the court for sentencing. He was at this point represented by court-appointed counsel.

Counsel replied in the affirmative in response to the court's question, "You know his record and you are familiar with this incident Mr. Eskra has pleaded guilty to?" Counsel was then asked, "Are you satisfied . . . that Mr. Eskra's plea of guilty was made by him freely?" To this, counsel also replied, "Yes." When asked if there was any irregularity in the proceedings, counsel stated:

"No. The only thing, I am satisfied the evidence against him was—that they had against him—the stuff that was obtained was done without a warrant prior to the time they did get a warrant. I don't know if the second search was curing the first one or not. But he is willing to throw himself on the mercy of the Court. I do feel that a charge of grand theft and burglary are cumulative."

Later in the sentencing proceedings, defense counsel stated:

"But as I said, the defendant is willing to plead guilty and throw himself on the mercy of the Court; and I feel that that defense, if valid, is not one that can be raised at this time in view of the multiple confessions the defendant has made. He freely acknowledges his guilt and is sorry for the commission of the crime."

Eskra was then given concurrent sentences of five years on the burglary charge and three years on the theft charge. The judge in sentencing him pointed out that Eskra had a long criminal record, but he also pointed out that, after he had served the minimum time, he would not object to his parole.

Upon the defendant's application to this court, different counsel was appointed for Eskra. The case is before us on two writs of error: One to review the judgment, the

other to review the denial of defendant's motion to withdraw his guilty plea.

Eskra insists that the acceptance of a plea of guilty without presence and prior assistance of counsel constitutes a denial of the defendant's rights under the Sixth amendment. The argument is that the defendant cannot intelligently plead guilty without counsel to assist him in determining the appropriateness of such a plea, and that, in addition, it is the function of counsel to use the bargaining power of a guilty plea to get the "best deal for his client."

It is also undoubtedly true that before accepting a plea of guilty, it is necessary, particularly when the defendant is not represented by counsel, to make sure that accused understands the nature of the crime with which he is charged and the range of punishments. While the court herein did advise the defendant of his right to counsel at state expense, he failed to explore the other elements suggested by *State ex rel. Burnett v. Burke* (1964), 22 Wis. (2d) 486, 494, 126 N. W. (2d) 91. See also *State ex rel. Kline v. Burke* (1965), 27 Wis. (2d) 40, 45, 133 N. W. (2d) 405. In this case the accused was not apprised of the range of punishments to which a plea of guilty might expose him, nor whether any inducements or promises impelled his plea of guilty. There was no attempt to determine the accused's intelligence or education. Nor was the accused alerted to the fact that a lawyer might discover defenses or mitigating circumstances not immediately apparent to the accused.

The trial judge failed to make the factual determination that this court requires as a preliminary to the valid waiver of counsel. The plea of guilty is not to be construed as a waiver of all constitutional rights. *State ex rel. Drankovich v. Murphy* (1946), 248 Wis. 433, 22 N. W. (2d) 540.

Had the judge thereupon proceeded to sentence Eskra, the validity of the conviction would be in substantial

doubt in view of the previous decisions of this court and of the United States supreme court. *State ex rel. Burnett v. Burke, supra,* and *Von Moltke v. Gillies* (1948), 332 U. S. 708, 68 Sup. Ct. 316, 92 L. Ed. 309.

However, the judge saw fit to appoint counsel to appear for Eskra at sentencing. We conclude that the right to complain of the errors at the time of arraignment and plea are waived by the conduct of counsel subsequently appointed.

The United States supreme court has said in an analogous case:

"All of this demonstrated to the satisfaction of the court below that even though petitioner may not have had counsel at the beginning, he had counsel in ample time to take advantage of every defense which would have been available to him originally. We think the record shows that petitioner actually had the benefit of counsel." *Canizio v. New York* (1946), 327 U. S. 82, 86, 66 Sup. Ct. 452, 90 L. Ed. 545.

We recognize that counsel cites cases that arrive at a contrary result. *Anderson v. North Carolina* (W. D. D. C. N. C. 1963), 221 Fed. Supp. 930; *Palumbo v. New Jersey* (3d Cir. 1964), 334 Fed. (2d) 524; *Shupe v. Sigler* (D. C. Neb. 1964), 230 Fed. Supp. 601. We consider these readily distinguishable on their facts.

The instant case is markedly different from any of those referred to by counsel in that the defendant in open court took the initiative of asking permission to talk to the deputy district attorney and to drive his own bargain. The transcript of the postconviction evidentiary hearing reveals that the deputy district attorney answered the defendant's questions and did so in the presence of two witnesses, both of whom agreed that no promises or coercion had been used to induce the plea of guilty. After the conference, the deputy district attorney dictated into the record his understanding of what occurred at the conference, and the defendant agreed with the deputy district attorney's statement. The affirmative statement

was entered into the record that the deputy district attorney made no promise whatsoever in regard to a possible sentence. It was made clear that the sentencing function was that of the judge.

Contrasted to this situation, the *Anderson* and *Shupe Cases* involved situations where the defendants were persuaded to change their pleas at a time and place where they were clearly unable to assume any initiative in bargaining, and where at the very least the conduct of the prosecution was grossly reprehensible. In *Anderson*, the defendant was in jail awaiting trial on a charge that carried the death penalty. He was represented by counsel, but nevertheless the prosecutor saw fit to persuade the defendant to enter a plea of guilty to a lesser charge in the absence of the accused's attorney. In *Shupe*, the deputy county attorney initially secured an incriminating statement from the defendant while he lay on an operating table severely wounded and awaiting surgery. It was admitted that the county attorney's office took the initiative in attempting to persuade the petitioner, without the presence of counsel, that he had no defense and that he should plead guilty. In addition, the court found that the district attorney promised a reduced sentence if the accused pleaded guilty.

In *Palumbo v. New Jersey* (3d Cir. 1964), 334 Fed. (2d) 524, the arraignment resolved itself into a comedy of errors. The court commenced the proceedings assuming that an Attorney Armstrong represented Palumbo. Through a misunderstanding, although Armstrong stated he did not represent Palumbo, the court nevertheless proceeded with the hearing and accepted the withdrawal of the former plea of not guilty to the indictment and accepted a plea of guilty. Attorney Armstrong did attempt to protect the rights of Palumbo to the extent of insisting that questions be asked assuring the voluntariness of the plea. However, the record makes it equally clear that he was not acting as counsel for the

accused. More important, insofar as the application of *Palumbo* to this case is concerned, there is no evidence that thereafter either Palumbo or subsequent counsel, if in fact one was appointed, attempted as a matter of strategy or otherwise to rely on the plea of guilty.

In the instant case, however, Eskra's counsel at the time of sentencing saw fit to take advantage of the guilty plea made at arraignment without counsel.

Eskra's counsel was closely questioned by the judge and although he stated that there was a possibility that the search of the automobile was questionable, he elected to advise the court that his client wanted to plead guilty and throw himself on the mercy of the court. Counsel at sentencing pointed out that his client had cooperated with the police and district attorney's office and freely acknowledged his guilt, and asked that this cooperative attitude be considered by the judge in sentencing. Counsel advised the court that he had read the defendant's FBI report (apparently the FBI arrest record) and was aware of his client's past record. He no doubt knew that, on the basis of that record, there existed the possibility of a severe sentence. He elected to forego any attempt to suppress the evidence that it is now alleged was illegally obtained. He ratified his client's plea of guilty and relied on the mercy of the court. These tactics were evidently successful, since the possible penalties of the two felonies combined was fifteen years imprisonment and $5,000 fine. The result of his strategy was concurrent sentences of five years on one count and three years on the other, and the declaration by the judge that he would not oppose an early parole.

Whatever constitutional rights the accused had to withdraw his plea were waived by this calculated choice made by his counsel. The supreme court of the United States in *Henry v. Mississippi* (1965), 379 U. S. 443, 451, 85 Sup. Ct. 564, 13 L. Ed. (2d) 408, held that a constitutional right may be waived by "counsel's delib-

erate choice of strategy." We have held in *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753, and *State v. Strickland* (1965), 27 Wis. (2d) 623, 135 N. W. (2d) 295, that waivers made by counsel are binding upon the client.

The crucial facts of this case are strikingly similar to those of *State v. Strickland, supra.* In that case, as here, the accused was allowed to plead without counsel. As in the instant case, the perfunctory admonitions to the accused prior to the acceptance of the plea were insufficient to meet the standards of *State ex rel. Burnett v. Burke, supra.* In each case, counsel was present for sentencing and chose not to raise any of the constitutional defects that were present at arraignment.

As we said in *Strickland:*

"When he was retained to represent defendant after the latter's arraignment a choice of two alternative courses was open to him. One was to move to withdraw or change the plea of guilty because of any defects, constitutional or otherwise, in the arraignment proceedings. The other was to utilize the existing guilty plea and urge it as a reason for leniency. Counsel chose the latter and we conclude this was an effective waiver of the right to now raise the objections here made that defendant did not intelligently waive counsel and understandingly enter his plea of guilty." *State v. Strickland* (1965), 27 Wis. (2d) 623, 630, 135 N. W. (2d) 295.

We conclude that this language is apropos the facts at hand, and deem the outcome of this to be ruled by the *Strickland* decision.

The waiver of the objections to the arraignment and the ratification of the plea of guilty also foreclose any further objection that the accused may have had to the allegedly unlawful search of his automobile.

"As the plea itself provides the basis for conviction no evidence need be introduced, and the right to a trial free of evidence illegally obtained is forfeited." *Hawkins v. State* (1965), 26 Wis. (2d) 443, 448, 132 N. W. (2d) 545.

In addition to the points discussed above, it is also contended that defendant did not have effective counsel at sentencing. The record belies such conclusion. As pointed out elsewhere in this opinion, counsel in the lower court successfully avoided the imposition of consecutive sentences, and succeeded in having the court sentence concurrently for much less than the maximum. While present counsel no doubt believes that at the very least the conduct of counsel in the lower court constituted a grievous tactical error, it is not for this court to judge the performance of counsel on the basis of hindsight or in terms of the roseate expectations of the accused. Suffice it to say that the performance of the counsel below far exceeded the minimum standards that this court has set. As we said in *Pulaski v. State* (1964), 23 Wis. (2d) 138, 148, 126 N. W. (2d) 625:

"Unless the representation of counsel is so inadequate and of such low competency as to amount to no representation, a new trial cannot be granted on that ground."

The federal courts use a similar test:

". . . allegations must disclose a performance by counsel so incompetent as to make the trial 'a farce or a mockery of justice.' " *Rivera v. United States* (9th Cir. 1963), 318 Fed. (2d) 606, 608.

No such allegations have been made, nor would they be appropriate.

In closing, we also take note of the fact that the county judge and the attorneys in the case below erroneously referred to the initial appearance before the magistrate as an arraignment. As we said in *Goodchild, supra,* at page 252:

"The term 'arraignment' is reserved for an appearance in a court having jurisdiction to take a plea to an information or indictment that has been filed and to which the court asks the defendant to plead."

The very definition of the word, "arraign," points out its function: [1]

> "*Law,* to call or set (a prisoner) at the bar of a court to answer to the charge of an indictment. In the technical common-law procedure in arraigning a prisoner he is called to the bar by his name; the indictment is read to him; and he is asked, 'How say you (A B), are you guilty, or not guilty?' The next step is judgment if he confesses guilt; or entry of his plea if he does not."

There is no doubt that the Federal Rules of Criminal Procedure [2] more clearly spell out the function of the initial appearance than do the Wisconsin statutes. The function is the same whether under the federal procedure or under the procedure of the state of Wisconsin. The chief purpose is to bring the accused without delay before a magistrate with the power to commit a person charged with the offense. The functions of the magistrate at that hearing are limited to formally charging the defendant with the offense for which he has been arrested, informing him of his right to counsel and of his right to have a preliminary examination, and setting bail. It is also suggested that the magistrate advise the defendant that he is not obligated to make any statement whatsoever and that any statement made can be used against him. Moreover, the magistrate shall not ask for nor accept any plea. This is a function reserved to a court having the jurisdiction to accept the plea and to sentence for the offense. We are aware of the fact that the proceedings in this case were prior to our statements on the same subject in *Goodchild.* We are also aware of the fact that the Wisconsin statutes involving criminal procedure are vague and confusing in that they intermix the procedure to be used on felonies with that to be used on misdemeanors.

It is the understanding of this court that the judicial council is presently undertaking a study to clarify pre-

---

[1] Webster's New International Dictionary (2d ed., 1953).

[2] 1963 Federal Rules of Criminal Procedure, Rule 5.

trial criminal procedure. In the meanwhile, we suggest that the interests of justice will be served if lawyers, judges, and laymen clearly understand that the term, "arraignment," refers not to the initial appearance before a magistrate, but only to the appearance for the purpose of reading and filing, and pleading to, the information in a court having jurisdiction to accept such a plea and to impose sentence.

*By the Court.*—Judgment and order affirmed.