EMBRY (alias Heller), Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 105, 106. Argued February 4, 1970.—Decided March 3, 1970.*

(Also reported in 174 N. W. 2d 521.)

154

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *Lawrence W. Durning,* district attorney of Eau Claire county.

HALLOWS, C. J. In October of 1967 Embry and Billie Whitlatch agreed to use a credit card purportedly issued to Edward F. Bumba for the purpose of making purchases of various goods from Standard Oil service stations and dividing the merchandise or selling it and dividing the profits. In December, 1967, they decided to come to Wisconsin for such "business" purpose. At the time Whitlatch had a 1967 Chevrolet station wagon which he had rented at the O'Hare International Airport in Chicago. To make the trip, Whitlatch rented a Pontiac from the same agency and charged it to the Bumba credit card. Embry and Whitlatch each drove one of the cars from Chicago to Portage, Wisconsin, where a U-Haul trailer was rented by Whitlatch by use of the Bumba credit card. A number of purchases were made in and between the Portage area and Eau Claire at Standard Oil stations with the Bumba credit card. Whitlatch used the Chevrolet while making the purchases. The items were later transferred to the Pontiac and trailer driven by Embry. Three purchases were made in Eau Claire with the Bumba credit card. The complaint involves a purchase of six cans of starting fluid made at the Standard Oil service station owned by Harold Mueller.

After making the purchases in Eau Claire, Embry and Whitlatch stopped at a motel where Whitlatch registered as Edward Bumba, again using the credit card. The Chevrolet and the Pontiac and trailer were left in sep-

arate parts of the motel parking lot. About this time the police were informed of the fraudulent use of the Bumba credit card and were alerted to be on the lookout for the Chevrolet station wagon. An Eau Claire police officer located the vehicle at the motel, learned of the presence of Embry and Whitlatch in room 102, and with assistance arrested the two men about 9 p. m. on Thursday, December 14, 1967.

The following day Whitlach gave the police written consent to search the Pontiac and trailer and the cans of starting fluid were found in the Pontiac. Whitlatch negotiated a plea of guilty to two offenses involving the use of the Bumba credit card and was sentenced to the state prison. After he was granted a transactional immunity under sec. 885.34, Stats., he testified as a state witness at Embry's trial.

The first assignment of error involves the sufficiency of the evidence to support the jury's finding of guilty. At the trial, Mueller testified he sold the six cans of starting fluid to Embry. Whitlatch, however, testified that he made the purchase at the Mueller station with the credit card and Embry was a block and a half down the street in the parked Pontiac. The trial court, pursuant to sec. 939.05, Stats., instructed the jury that one who aids and abets the commission of a crime or is a party to a conspiracy with another to commit a crime can be charged and convicted as a principal. We think the evidence was sufficient to convince a jury beyond a reasonable doubt that Embry and Whitlatch had an arrangement whereby they used the Bumba credit card to make purchases and committed the crime of forgery. In respect to the Mueller purchases, Embry aided and abetted and could, therefore, be charged and convicted as a principal although he did not make the purchases. *Carter v. State* (1965), 27 Wis. 2d 451, 134 N. W. 2d 444, rehearing denied, 27 Wis. 2d 451, 136 N. W. 2d 561,

certiorari denied, 383 U. S. 948, 86 Sup. Ct. 1206, 16 L. Ed. 2d 211, certiorari denied, 389 U. S. 867, 88 Sup. Ct. 137, 19 L. Ed. 2d 141; *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

But, counsel for Embry insists that the evidence is insufficient because the two chief witnesses for the state gave directly conflicting testimony of who made the credit-card purchase and such conflicting testimony on the material point of identification renders both versions incredible as a matter of law. We disagree that such is the effect of conflicting testimony by witnesses whether they are for the prosecution or the defense.

The case of *State v. Stevens* (1965), 26 Wis. 2d 451, 463, 132 N. W. 2d 502, relied on by Embry is not authority for that proposition. In *Stevens* there was a contradiction in testimony between the defendant's witnesses and the state's witnesses. The rule was stated to be that the determination of the credibility of the witnesses and the weight to be accorded their conflicting testimony were properly a function of the jury. It may be in some circumstances conflicting testimony given by a witness renders him as a matter of law unworthy of belief but generally credibility is a question of fact. In *Mandella v. State* (1947), 251 Wis. 502, 514, 29 N. W. 2d 723, the testimony of a witness for the state was so inconsistent and contradictory as to render him untrustworthy, but because he was an eyewitness to the crime it was held a jury could believe and accept such parts of his testimony as it found to be most credible.

In *O'Neil v. State* (1941), 237 Wis. 391, 396–398, 296 N. W. 96, this court did not hold that contradictory testimony of the different witnesses for the state necessarily cancelled the testimony and rendered it unfit as a basis for a conviction. Inconsistent testimony of two arresting officers was presented in *Galloway v. State* (1966), 32 Wis. 2d 414, 421, 145 N. W. 2d 761, 147 N. W. 2d 542, and there is some language in the case deprecating the

importance of the inconsistency. However, *Galloway* did not hold expressly or by implication that as a matter of law inconsistent statements on a material issue by witnesses of one party to a lawsuit rendered the testimony of both witnesses incredible. Allowing the jury to accept or reject the inconsistent testimony even under the beyond-a-reasonable-doubt burden of proof is a more salutary rule. The prosecution in a criminal case is limited in its choice of what testimony it will not use against an accused.

The next assigned error involves the question of whether the trial court sentenced Embry for several crimes under the guise of sentencing him for the one crime of which he was convicted. The argument rests upon perhaps the unfortunate statement of the trial court in referring to crimes that "you aren't being sentenced for one." But this reference taken in context indicates the trial court was considering the nature of the crime and the pattern of conduct in order to evaluate what the sentence should be. In sentencing, a trial judge must consider the nature of the crime, the character of the accused, and the rights of the public.[1] In determining the character of the accused and the need for incarceration and his rehabilitation, the court must consider the nature of the crime and whether it is an isolated act or a pattern of conduct. In considering other crimes for such purpose, it is the weight of authority that the sentencing judge can take such offenses into consideration to determine the sentence for the crime in question. *See* Annot. (1964), *Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant*, 96 A. L. R. 2d 768.

This procedure must be distinguished from a practice in this state, especially in Milwaukee, of charging a

---

[1] *Standards Relating to Appellate Review of Sentences*, American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft, 1968, page 7.

multiple offender with two or more offenses for which
the evidence is most conclusive and bringing the judge's
attention to additional uncharged offenses prior to sen-
tencing. Upon agreement between the state and the
accused, the judge may take these offenses into considera-
tion and the prosecution agrees not to prosecute. It is
expected the uncharged crimes will influence the length
of the sentence for the crime or crimes the defendant
has been found guilty of or to which he has plead guilty.
The advantage of this technique to the accused is that
he can clean his slate of several uncharged crimes with
the safety of only receiving at the most the maximum
sentence on the one or two crimes of which he is con-
victed. *See* Dawson, *Sentencing: The Decision As To
Type, Length, And Conditions of Sentence,* page 209, The
Administration of Criminal Justice series. This pro-
cedure is also to be distinguished from consolidating
pending charges in several counties in one county under
sec. 956.01, Stats.

The presentence investigation report [2] consisted of a
list of other convictions or arrests for perjury, mail theft,
forgery, con games, obtaining merchandise under false

---

[2] Normally a presentence investigation report is not included in
the record. However, if this court is to review a sentence it is
necessary for such a report to be included as a part of the record
so this court has before it all the information the trial court had
in pronouncing the sentence. Such procedure is approved, Stan-
dards Relating to Appellate Review of Sentences, American Bar
Association Project on Minimum Standards for Criminal Justice.
On page 42, sec. 2.3 (a) (iii), Record on appeal; statement explain-
ing sentence, provides:

"(a) The following items should be available for inclusion in
the record on appeal:

". . .

"(iii) copies of the presentence report, the report of a diag-
nostic facility, or any other reports or documents available to
the sentencing court as an aid in passing sentence. The part of
the record containing such reports or documents should be subject
to examination by the parties only to the extent that such ex-
amination was permitted prior to the imposition of sentence."

pretenses, crime against nature, theft and deceptive practices. Forgery carries a maximum sentence of ten years, but the trial court sentenced Embry to an indeterminate term of not more than seven years. In reviewing the sentence under the authority recognized in *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, and in *Jung v. State* (1966), 32 Wis. 2d 541, 547, 145 N. W. 2d 684, we do not find that such sentence was excessive or included any penalty or punishment for other crimes.

While the brief of Embry raises the question of whether the court erred in granting transactional immunity under sec. 885.34, Stats., on oral argument it was conceded that there was no error; therefore, we do not consider the question.

Embry claims the testimony relating to the cans of fluid and other exhibits was the product of an unlawful search and seizure. We think this argument has no merit. Whitlatch gave permission to search the Pontiac and trailer. It was he who had rented the trailer in the name of Edward Bumba and he who registered at the motel under that name and told the police he was Bumba. Under the view that Whitlatch and Embry were acting together in this forgery venture, the most that can be said for Embry is that he had an equal right to use the Pontiac and U-Haul trailer with Whitlatch. We think it well established that where two persons have equal rights to the use or occupancy of premises either may give consent to a search and the evidence thus disclosed can be used against either of them. *United States v. Sferas* (7th Cir. 1954), 210 Fed. 2d 69, 74; *see also Holt v. State* (1962), 17 Wis. 2d 468, 117 N. W. 2d 626; *United States v. Reed* (7th Cir. 1968), 392 Fed. 2d 865; *United States v. Cudia* (7th Cir. 1965), 346 Fed. 2d 227, 229, certiorari denied (1965), 382 U. S. 955, 86 Sup. Ct. 428, 15 L. Ed. 2d 359, rehearing denied (1966), 382 U. S. 1021, 86 Sup. Ct. 612, 15 L. Ed. 2d 536. We think the rule is equally applicable to an automobile and trailer as it is to real estate.

It is also claimed the search and seizure was illegal because Embry was detained for an unreasonable length of time. Embry was arrested about 9 o'clock in the evening on Thursday and was not brought before a court for an initial appearance until the following Monday morning. The defense relies on *Phillips v. State* (1966), 29 Wis. 2d 521, 139 N. W. 2d 41. However, the search took place on Friday, the day following the arrest, and we fail to see how the failure to bring Embry to court until Monday had any effect on the validity of the search and seizure. What the rule in the *Phillips Case* attempted to prevent was the weakening of the resistance of the accused by the psychological coercion of being detained in custody and "worked upon" by the police to secure evidence.

During the closing arguments to the jury the prosecutor made the statements: "I know what the truth is. Mr. LaFave knows what the truth is. Mr. Embry knows what the truth is. We are spending time and money running around the merry-go-round. We all know what the truth is. The truth is he was involved in this business venture and illegal obtaining of merchandise and forgery." An objection was made to "that part of the argument referring to what anybody believes" but was in effect overruled. There is a split of authority on the question of whether a prosecutor's opinion given in closing argument that the accused is guilty requires a new trial. 24 C. J. S., *Criminal Law*, p. 62, sec. 1442. In Wisconsin a prosecutor or a defense counsel may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors. However, when such an opinion is expressed it must be clear that it is based solely upon the evidence in the case. It is not permitted to say I know or believe the defendant is guilty or not guilty. The independent opinion of counsel is not evidence; it gives the lay jury the idea that the defense

or prosecution has information not disclosed and leads it to speculate on what was not adduced as evidence in the trial. This is especially true when one acts in an official capacity such as the prosecutor. Some courts will not allow an expression of any opinion of counsel even though it is based on the evidence. *Harris v. United States* (C. A.—D. C. Cir. 1968), 402 Fed. 2d 656; *see People v. Hill* (1968), 98 Ill. App. 2d 352, 240 N. E. 2d 801, certiorari denied (1969), 395 U. S. 984, 89 Sup. Ct. 2150, 23 L. Ed. 2d 773. We adhere to the rule of long-standing in Wisconsin and stated in *Fertig v. State* (1898), 100 Wis. 301, 308, 75 N. W. 960:

"So long as counsel did not depart from the evidence produced, but confined his argument to reasoning from that up to the conclusion that it established guilt, however eloquently and persuasively he may have handled his subject, it was not only legitimate but commendable. Within the record in this regard, the field is broad, and the license of the advocate, and duty as well, permit him to say with the utmost freedom what the evidence tends to prove, and that it convinces him, and should convince the jurors as well, of the fact in issue. As said in *People v. Hess*, 85 Mich. 128: 'To deny to a prosecuting officer that privilege, would be to deny him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has a right to presume will lead them to the same conclusion, if they view it as he does.' That does not mean that a prosecuting officer may express his opinion independent of the evidence that the accused is guilty, or his opinion of guilt, which may or may not be based on the evidence, but that he may state from the record, upon which the issue is to be submitted to the jury, that it establishes guilt."

We think the remarks of the prosecutor in this case amount to an expression of his opinion, which was not based upon any evidence and should not have been made. However, in view of the overwhelming evidence on the issue of guilt we conclude that the unjustified remarks

were not prejudicial but might well be under different circumstances.

We find no merit in the argument that Embry was denied a fair trial. The prosecutor during cross-examination of the police officer called by the defense asked whether the accused made any statement to the officer concerning having met Mr. Whitlatch in jail. The court on its own motion ruled out the question and instructed the jury to completely disregard it. Prior in the trial an objection as to where Whitlatch first met Embry was objected to and sustained on the ground of the question being irrelevant and immaterial excepting generally as to geographical location. This is not a case on the part of the prosecutor of persisting in improper examination after warning by the court.

The last argument is one that is raised with increasing frequency in criminal appeals, *i.e.*, trial counsel was not effective and not adequate. An attorney is not ineffective because the case resulted in a conviction. The test of adequacy of counsel has been stated many times by this court and as recently as our last assignment. *See Cross v. State* (1970), 45 Wis. 2d 593, 173 N. W. 2d 589; *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. 2d 65; *Eskra v. State* (1965), 29 Wis. 2d 212, 223, 138 N. W. 2d 173; *Rivera v. United States* (9th Cir. 1963), 318 Fed. 2d 606, 608; *State v. Willing* (1968), 39 Wis. 2d 408, 159 N. W. 2d 15.

The claim of inadequacy of trial counsel is based in part on his failure to cross-examine Whitlatch sufficiently to impeach his credibility. We think Whitlatch's credibility was adequately impeached and there was no use of belaboring the point. It is claimed defense counsel failed to cross-examine Whitlatch adequately concerning his plea-bargaining agreement. This would go to the credibility of Whitlatch and the jury knew he had entered

a plea of guilty. Such examination would be material but unless there is some evidence of impropriety the failure to extensively examine was not of sufficient prejudice to Embry to consider his trial counsel incompetent. It is also claimed the defense counsel failed to object or move for a new trial on the basis of the prosecutor's prejudicial remarks in his opening statement and in his closing statement and to move to suppress the exhibits before trial pursuant to sec. 955.09, Stats.

We have found no merit in the argument that the exhibits should have been suppressed and the failure to move for a new trial because of remarks in the opening statement and in the closing argument is not sufficient to constitute the representation inadequate. Nor do we agree with the argument that if the individual incidents are not sufficient the totality of them constitutes sufficient grounds for a basis of inadequacy of trial counsel.

We think the inadequacy of trial counsel must consist of mistakes in the practice which are so prejudicial in result that the defendant in fact did not receive a fair trial. Prejudicial mistakes made by counsel which are corrected or rendered nugatory on appeal, of course, cannot be used as a basis for inadequacy of counsel. In the trying of lawsuits there will always be a difference of opinion as to trial technique. In judging trial counsel's representation, it must be considered in the context in which such services are rendered and not in light of a later hope that if trial counsel had planned differently, the result might have been more palatable. Trial counsel must take his clients and facts as he finds them and make the most of the situation. We think that was done by defense counsel in this case.

*By the Court.*—Judgment and order affirmed.