MILBURN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 42.   Argued January 7, 1971.—Decided February 2, 1971.*
(Also reported in 183 N. W. 2d 70.)

56

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Daniel J. Miron,* district attorney of Marinette county.

HEFFERNAN, J. In *State v. Escobedo* (1969), 44 Wis. 2d 85, 170 N. W. 2d 709, we pointed out the inappropriateness of using the motion for judgment notwithstanding the verdict in a criminal trial to raise the question of the sufficiency of the evidence. However, a proper motion for new trial based upon specific allegations of the insufficiency of evidence was made, and we therefore conclude that the sufficiency of evidence is properly raised in this appeal.

Defendant's first contention is that the items admitted as the consequence of the officer's investigation of Milburn's automobile were the result of an unconstitutional search and seizure. We do not agree.

As stated in the summary of the facts, Officer Christnagel saw the questioned items—the keys, the coins, and the check blanks—as a result of looking through the

window of the automobile. They were in plain view. Later, having that knowledge of Christnagel's discovery, Sergeant Erdman and Officer Patenaude went to the place where the vehicle had gone into a ditch and there, before entering the car, saw the items inside the vehicle.

It was stipulated by the parties that the search was neither consented to nor was it made incident to an arrest. The propriety of the seizure rests upon the determination of whether it was a search in a constitutional sense, and, if it was, whether the search and the subsequent seizure was unconstitutional as being unreasonable.

We conclude that the facts in this case indicate that no "search" in the constitutional sense took place. In *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 339, 156 N. W. 2d 397, we pointed out that:

"A search can be conducted by one's eyes alone. However, 'A search implies a prying into hidden places for that which is concealed.' It is not a search to observe what is in plain view."

In *Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067, the United States Supreme Court said:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

It is uncontradicted that the items seized were first seen through the windows of the Milburn car by Officer Christnagel and were subsequently viewed by Sergeant Erdman and Officer Patenaude when they shined the flashlight into the windows of the vehicle in a ditch near Pestigo. The officers had the right to be in the position from which they viewed the objects within the car. The defendant relies on the definition of a search in *Haerr v.*

*United States* (5th Cir. 1957), 240 Fed. 2d 533, 535, and quoted with approval in *United States v. Pate* (7th Cir. 1963), 324 Fed. 2d 934, 935:

" 'A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest.' "

We believe that this definition is not apposite to the facts herein, for the view was not pursuant to an exploratory investigation or quest. The items were plainly before the officers when they came upon the automobile. Moreover, they had received prior reliable information about the existence of these items in the car and, hence, they were not engaged in a "quest" for evidence about which they had no prior knowledge. In any event, this court in *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349, refused to follow this narrow definition of a search. There, an automobile and the body of a murder victim were discovered on the same farm. An officer noticed that the back seat of the car was bloodstained. He procured a search warrant, went back to the vehicle, and seized a number of items from the vehicle. The following day an officer of the state crime laboratory, without a search warrant, seized a blood-soaked section of the floor mat and a bloodstained sock. We held:

". . . they were items in plain view when Undersheriff Howard was by the Dodge . . . . these items were in plain view and subject to seizure without a warrant." (pp. 498, 499)

We therefore conclude that, under the circumstances of this case, the observations of Sergeant Erdman and Officer Patenaude did not constitute a search and the objects could be seized and were properly admissible into evidence without the formality of a search warrant.

Having concluded that the conduct of the officers did not constitute a search in a constitutional sense, we are not obliged to pursue the question of whether the seizure would be unreasonable if a search had in fact taken place, nor need we explore the basis of the trial judge's conclusion that the search and seizure was constitutionally antiseptic under the "exceptional circumstances" doctrine set forth by the United States Supreme Court in *Johnson v. United States* (1948), 333 U. S. 10, 68 Sup. Ct. 367, 92 L. Ed. 436. Whether or not the trial judge's decision was based upon factors other than those we considered dispositive is immaterial, inasmuch as we conclude that he properly refused to suppress the evidence and permitted it to be admitted at trial.

While awaiting trial on the burglary charge which is the subject of this appeal, Milburn was charged in the circuit court for passing a number of NSF checks in violation of sec. 943.24 (1) and (2) (a), Stats. At the arraignment on those charges, Judge MARTINEAU presided. Milburn pleaded guilty to all of those charges. In reply to Judge MARTINEAU'S question asking whether restitution had been made on those checks, the district attorney answered that restitution had been made, ". . . however, because of this defendant's record I felt there should be continued prosecution on it." Judge MARTINEAU stated he did not want to know Milburn's record, and the district attorney said, "Well, I think it is pertinent for sentencing, if you intend to sentence at this time." Judge MARTINEAU deferred sentencing on the check charges. Following the conviction of Shepherd and Milburn for burglary, but prior to sentencing, Judge MARTINEAU asked for a presentence investigation, saying:

"I have heard rumors around that one or both of these men has criminal records and I should have that. If it is fact or fiction, I should have the story."

The state public defender, representing Milburn on this appeal, contends that this indicates the defendant has been denied a fundamental requirement of due process—that the defendant be tried by an impartial judge. He asserts that, when the district attorney, prior to trial, informed Judge MARTINEAU that Milburn had a prior criminal record, a "fatal blow was struck at the impartiality of such judge." We do not agree.

In *State v. Carter* (1966), 33 Wis. 2d 80, 88, 146 N. W. 2d 466, we stated, "We wish to point out that judicial knowledge, properly acquired, concerning the defendant cannot be the basis of disqualification." The state public defender, however, contends that the trial judge's information in this case was not "properly acquired." He argues that, because Judge MARTINEAU had decided not to consider sentencing on the check charges at the time the district attorney made the statement concerning Milburn's prior criminal record, the information was "improperly" acquired. This argument is not persuasive.

There is no doubt that, had Judge MARTINEAU chosen to do so, he could have, at the time of the arraignment on the check charges, received full information on the defendant's criminal record. Had he done so, the information would have been indisputably properly acquired in the course of the correct exercise of his judicial functions. The mere fact that, at that point, the district attorney alluded to a prior criminal record, which the trial judge then chose to ignore, rather than to act on as he could have, is a meaningless distinction—one which is insufficient for us to conclude that there was a constitutional error that deprived the defendant of an impartial judge. In *United States v. Brooks* (7th Cir. 1965), 355 Fed. 2d 540, 542, in dealing with the possible contamination of a judge who rules on the admissibility of a defendant's confession and later decides the issue of the defendant's guilt, the court stated:

"Our jurisprudence postulates the ability of judges to dismiss from their minds, in reaching decisions, offers of evidence excluded by rulings after hearing arguments on admissibility of that evidence."

Moreover, this court has ruled on similar problems. In *Gauthier v. State* (1965), 28 Wis. 2d 412, 421, 137 N. W. 2d 101, we stated in a case tried by the court:

" '. . . the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different.' [citing cases.]"

Certainly, if we accord such discretion to a trial judge in dismissing from his mind inadmissible evidence, we cannot reasonably conclude that the judge's impartiality was affected by information that he had received during the course of his judicial duties. In this case it is undisputed that the trial judge did not rely on the sketchy information earlier offered by the district attorney, but asked for a presentence investigation to establish the facts. The rule proposed by the state public defender would strike at the very heart of a basic tenet of our judicial philosophy—that a trial judge, by training and by the obligations of his office, is able to omit from his consideration information that does not come to him by proper judicial procedures. Moreover, the public defender's proposition would, as a practical matter, be unworkable. It is not infrequent that trial judges have before them defendants who have been previously tried in their courts and who might well have been sentenced by them. This does not negate the presumption that the trial judge, in fidelity to his oath of office, will try each case on its merits. There is nothing in this case to indicate judicial impropriety, and there is no evidence that the trial judge was anything but impartial.

The defendant additionally contends that the evidence was insufficient to support a finding of guilt beyond a

reasonable doubt. We are satisfied that the proof adduced, and which is set forth in the statement of facts, clearly indicates the sufficiency of the evidence. The defendants were seen in the immediate vicinity of where the entry occurred. They had in their possession articles which the evidence shows were stolen from the Berger Brothers establishment. In addition, the key that was found in the Milburn car and which allegedly was taken from the desk in the Berger Brothers Salvage Yard fitted the door to Berger's place of business. The defendant contends, although admitting that the evidence in regard to the key was crucial and highly probative of defendant's guilt, that the key was improperly admitted into evidence because the police officers could not identify the key at trial as being the identical key which was found in the Milburn automobile. However, Berger testified that the keys produced at trial and the key case were the ones that were taken from his establishment. Even were we to conclude that the defendant is correct when he states that the keys produced at trial were not shown to be the keys that were taken from the Milburn vehicle, that fact in itself is irrelevant. The probative value of the keys rested not upon their production and authentication at trial, but rather upon the testimonial assertion, which was uncontroverted, that Sergeant Erdman and Officer Patenaude found that one of the keys taken from the Milburn automobile fit the door to Berger's establishment. We, accordingly, conclude that the chain-of-custody rule urged by the defendant is inappropriate at this juncture of the case. The crucial point was the testimonial evidence of the officers and not the authentication of the key at trial. While there is strong evidence to show that the judge, in the exercise of proper judicial discretion, could properly rule that the key produced in court was the identical key seized from the Milburn automobile, an error in this respect would in no way prejudice the defendant.

The physical facts and the testimonial evidence are sufficient to convince a trier of fact, acting reasonably to that degree of certitude which the law defines as beyond a reasonable doubt, that the defendant Milburn was guilty of burglary. *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Dombrowski, supra.*

Counsel on this appeal also contends that the defendant was denied effective counsel at trial. He bases this contention on the fact that, during the course of trial, defense counsel failed to object to the admission of certain exhibits that were seized from the Milburn car. As we have pointed out, a comprehensive motion to suppress all of these items was made prior to trial, and we have concluded that they were properly admissible. Moreover, the objections were renewed in postconviction motions. While, arguably, there might have been some histrionic merit were this a jury trial, to make objection to the introduction of this evidence, we see no prejudice to the defendant by failure to object during the course of the trial. The position of defense counsel in regard to these questioned items was on the record, and the defendant's rights were fully preserved. No conduct of the trial counsel in this respect is at all questionable.

The defendant also points out that his counsel at trial indulged in "highly inadvisable" questioning on cross-examination and that such questioning materially aided and strengthened the state's case. On direct examination, Officer Patenaude testified that State's Exhibit 1, the keys in the brown leather case, were the keys found in Milburn's car. On cross-examination, defense counsel asked Patenaude, "Do you know that the keys you removed from the Milburn car came from Berger's." Officer Patenaude answered, "Yes," and when defense counsel asked how he knew, Patenaude replied, "Because after we locked up the car, we came back and tried them in the front door." Defense counsel then asked if they worked, and the officer answered that they did. We

cannot disagree with the public defender's contention that the question asked was inadvisible and the answer received was of significance in bolstering the state's case. Perhaps the most usual judgmental error made by lawyers in cross-examination is to ask a question not knowing whether or not the answer will be favorable or unfavorable to their clients. From the context of the trial, the question, however, was not wholly unreasonable. Even without the evidence adduced by this question, the case against the defendant was strong and could have led a reasonable judge to make a finding of guilty. Had the answer to defense counsel's question been negative, a substantial point would have been made on behalf of the defendant. By hindsight, it is clear that the question would better have not been asked. However, there was additional testimony by Sergeant Erdman that the keys were tried in Berger's front door and one of them fit. We cannot conclude that, in the context of this trial, this single question deprived the defendant of effective assistance of counsel or of a fair trial. There is not a record brought before this court which, when viewed from the perspective of an appellate review, does not reveal certain situations which could have been better handled by counsel had he the clairvoyance to anticipate all that might subsequently transpire. It is not unusual in contested trials for counsel to ask questions which result in answers which are unfavorable to their clients, but this court has often said that we will not conclude that a defendant received ineffective counsel unless trial representation was so inadequate as to amount to no counsel at all. *Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694; *State v. Cathey* (1966), 32 Wis. 2d 79, 145 N. W. 2d 100; *Eskra v. State* (1965), 29 Wis. 2d 212, 138 N. W. 2d 173. In the instant case the transcript reveals that the defendant received vigorous representation by well informed and learned counsel. His motions made both before and after trial evinced a thorough

knowledge of the criminal law, and, during the course of trial, every reasonable opportunity was used to further the defendant's cause.

*By the Court.*—Judgment and order affirmed.