SOEHLE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 37. Argued June 5, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 341.)

For the plaintiff in error there was a brief by *Raymond E. Schrank II,* and *Graff & Schrank,* all of Madison, and oral argument by *Raymond E. Schrank.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Challenged here are very nearly all of the steps taken by the police, leading from interrogation through arrest to the bringing of criminal charges against the defendant. So we will take up, in chronological sequence, what took place on the evening of the defendant's arrest.

*Interrogation.* Police Officer Puls was sitting in a parked squad car observing the residence at 644 East

Johnson Street in the city of Madison. The night before police had found a large quantity of illegal drugs in the residence. Defendant and a companion drove up and parked some distance in front of the squad car. Both men got out of the car and walked to the side door of the residence. They knocked on the door. Receiving no response, they returned to the sidewalk and walked down the street, leaving their car parked on the street. Five or ten minutes later they returned, walked about and sat on the cement steps leading to the residence. Police Officer Puls radioed for an additional officer, and both officers approached defendant and his companion. Both men were asked for identification. Defendant's objection to such stopping and interrogating is without merit. Under these circumstances it was entirely reasonable for the two police officers to stop and interrogate defendant and companion to determine their identity.[1]

*License check.* Police Officer Puls had observed the defendant drive the 1965 Plymouth Barracuda automobile and park it at the curb on East Johnson Street. He requested the defendant to produce his driver's license. The defendant did not have one, or at least could not show the officer a driver's license. Either for purpose of identification or to determine if the defendant had operated a motor vehicle without a license, the police officer was entitled to include in the interrogation a request to be shown a driver's license by the person he

---

[1] *Adams v. Williams* (1972), 407 U. S. 143, 145, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612, the court stating: " '. . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' " (Citing *Terry v. Ohio* (1968), 392 U. S. 1, 22, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889.) *See also: State v. Williamson* (1973), 58 Wis. 2d 514, 518, 206 N. W. 2d 613; *State v. Chambers* (1972), 55 Wis. 2d 289, 198 N. W. 2d 377; *Molina v. State* (1972), 53 Wis. 2d 662, 193 N. W. 2d 874.

had observed driving the car. It has been termed " 'the essence of good police work' " to thus briefly stop a suspicious individual either " '. . . to determine his identity or to maintain the status quo momentarily while obtaining more information.' "[2]

*Arrest of defendant.* Police Officer Puls informed the defendant, when he was unable to produce a driver's license, that he was going to issue him a citation for driving a motor vehicle without a license. The defendant was then informed that he was under arrest. It was entirely proper for the police officers, when the defendant could not produce a driver's license, to place him under arrest for driving without an operator's license. There was present " '. . . that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.' "[3] Police Officer Puls had radioed for a vehicle license check on the automobile that the defendant was driving and had been informed that it was owned by a Walter Balsiger who did not live in Madison. Asked by the officers where he had obtained the car, defendant stated he and his companion had borrowed it from a girl whom he knew only as "Jay." At this point the police officers decided to take the defendant to the police station.

*Search of person.* With the defendant under arrest and about to be taken to the police station, the police officers searched his person and the keys to the automobile were found in his possession. As to this search of the person, defendant's brief states that "a question can be raised." Under the circumstances here present,

[2] *State v. Williamson, supra,* at page 518, quoting *State v. Chambers, supra,* at page 294, citing *Adams v. Williams, supra,* at pages 145, 146.

[3] *Ball v. State* (1973), 57 Wis. 2d 653, 659, 205 N. W. 2d 353, quoting *State v. Doyle* (1968), 40 Wis. 2d 461, 466, 162 N. W. 2d 60; *Molina v. State, supra,* at page 671.

we find the search of the person reasonable as a protective search for weapons. Even before placing the defendant under arrest, under these circumstances, the police officers were warranted to frisk or pat down the defendant for weapons, to "allow the officer to pursue his investigation without fear of violence." [4] Here the search of the person was incident to arrest, the defendant having been placed under arrest and the decision reached to take him to the police station. Where a person is placed under arrest, as distinguished from being given a summons to appear in court at some future time, this court has held that it is not unreasonable for the arresting officer to search his person for weapons. [5] The search of the person here meets the test of reasonableness under these circumstances.

*Entry into automobile.* Following the decision to take the arrested defendant to the police station, the police officers decided to "secure" the automobile which was to be left behind. Police Officer Sippl testified: "I entered the car on the driver's side, and after assuring myself that these keys did fit that car, I reached over

---

[4] *Adams v. Williams, supra,* at page 146 stating: " '. . . The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. . . .' " Citing *Terry v. Ohio, supra,* at page 30. Quoted with approval in *State v. Williamson, supra,* at page 519; *State v. Chambers, supra,* at page 295.

[5] *Barnes v. State* (1964), 25 Wis. 2d 116, 125, 130 N. W. 2d 264, this court stating: "We are not persuaded that where a traffic offender actually is arrested, as distinguished from being handed a summons to appear in court at some future time, that it is unreasonable for the arresting officer to search his person for weapons. . . . It seems to us that the protection of the lives of our law-enforcement officers outweighs the slight affront to personal dignity of the arrested person who undergoes a search for weapons. . . ."

and locked the right front door of that car, at which time there was a motorcycle helmet laying in the front seat which I knocked . . . onto the floor, and when the helmet fell onto the floor, I noticed an automatic pistol fall out of the helmet." It was not unreasonable for the police officers to make certain that the car was locked before they left the scene to take the defendant to the station. This was an entirely reasonable precaution to make less likely that the car would be driven off or its contents stolen or removed while it was left standing on the street. However, asked on cross-examination whether the car was already locked prior to the time he approached it, Police Officer Sippl responded, "I believe it was." If the doors were locked there was no reason to enter the car to lock them.

No claim is made that police entry into the car was justified as part of a weapons search limited in scope to such protective purpose.[6] With the doors locked, there could be no such purpose.[7] Nor is there any claim that this was a lawful search incident to arrest to prevent the destruction or removal of evidence.[8] Nor is there any claim that the mobility of the automobile necessitated the search as this would require reasonable grounds for belief that the contents of the automobile

[6] State v. Williamson, supra, at page 522, upholding prearrest search and seizure of loaded revolver from glove compartment of defendant's automobile, this court stating: ". . . Here, once having discovered the bullets, that protective and precautionary purpose was hardly fully served by determining that the gun they fitted was not on the person of the defendant."

[7] Id. at page 522, this court stating: "Where the officer reached under the front seat, the defendant, standing by the door or the occupant sitting in the front seat, could also have reached. Given a quick break for the weapon, the driver by the door or the occupant in the car, could have reached into the unlocked glove compartment as did the officer."

[8] See: Chimel v. California (1969), 395 U. S. 752, 89 Sup. Ct. 2034, 23 L. Ed. 2d 685. See also: Vale v. Louisiana (1970), 399 U. S. 30, 90 Sup. Ct. 1969, 26 L. Ed. 2d 409.

offended against the law.[9] The arrest of the defendant for driving without a license, even with other attendant circumstances given weight, did not provide any such probable cause basis for a warrantless search of the automobile to secure destructible evidence, and the state does not claim that it did.

Rather the state contends that, with the motorcycle helmet inadvertently knocked over by the police officer, the pistol was in plain view when the officer saw it and seized it. Where a police officer saw the questioned items in plain view while he was looking through a car window, this court held that no "search" in the constitutional sense took place.[10] That case followed the long settled rule that " '. . . objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' " [11] But, also in that case, this court specifically found that the officers "had the right to be in the position from which they viewed the objects within the car." [12] Can that be said of the policeman's

[9] *Chambers v. Maroney* (1970), 399 U. S. 42, 49, 90 Sup. Ct. 1975, 26 L. Ed. 2d 419, saying of searches of automobiles without warrant and incident to arrest: " 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' " Citing *Carroll v. United States* (1925), 267 U. S. 132, 158, 159, 45 Sup. Ct. 280, 69 L. Ed. 543. *See also: Dyke v. Taylor Implement Co.* (1968), 391 U. S. 216, 88 Sup. Ct. 1472, 20 L. Ed. 2d 538.

[10] *Milburn v. State* (1971), 50 Wis. 2d 53, 58, 183 N. W. 2d 70.

[11] *Id.* at page 58, quoting and citing *Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067. *See also: State v. Davidson* (1969), 44 Wis. 2d 177, 195, 170 N. W. 2d 755.

[12] *Id.* at page 58. *See also: Mears v. State* (1971), 52 Wis. 2d 435, 444, 190 N. W. 2d 184, upholding the police seizure of a leather case from the rear seat of an automobile, this court stating: "the officer had the right to be where he was, and, that being true, he had the right to see what he saw."

entering and sitting in the car in this case? We think not. The officer testified that his intention was "to lock up the car and secure it" and "check the keys to see if they fit that car." Asked why he did not do the locking and the checking from the outside of the car, not the inside, he answered that East Johnson Street is a one-way street, and the car was parked so that ". . . the passenger door [was] near the lane of traffic . . . . I would have been in the lane of traffic." There are some risks involved in walking around a car to check or lock a door on the street side. But, if one waits until there is a break in the line of oncoming traffic, there is no reason why even the most prudent person would not undertake to walk around the car and safely complete the undertaking. The reason given is not sufficient to warrant a warrantless entry into a locked automobile.

It follows that the defendant's motion to suppress the gun seized during the above-described police entry into the automobile should have been granted. So the judgment of conviction on a charge of carrying a concealed weapon must be set aside; defendant's motion for withdrawal of guilty plea on such charge must be granted; defendant's motion for suppression of the gun as evidence must be granted. The case involving concealment of a dangerous weapon is returned for further proceedings, consistent with this opinion. As to the charge of possession of dangerous drugs, the gun had no materiality or relevance and that conviction is not affected by holding the gun inadmissible.

*Consent search.* Arriving at the police station, Officers Puls and Sippl were directed to seek to locate the owner of the automobile involved. They located a girl, Jane "Jay" Balsiger, who explained that the automobile was owned by her father, Walter Balsiger of Pardeeville, Wisconsin, who had given her the use of the car for the summer. She stated she had allowed defendant and his

companion to use the car on the afternoon of the day of arrest. Jane Balsiger signed a written consent to a search of the car by the police. The police, in the presence of Jane Balsiger, searched the car. She pointed out items in the car that did not belong to her. These included an attaché case, a tobacco can and a locked box or container. Pursuant to such consent search, the case, can and container came into police possession, and their contents led to the charges of possession of dangerous drugs brought against the defendant.

If the consent by Jane Balsiger to the search is valid, there could be no constitutional infirmity to the manner in which the three containers came into police possession. However, defendant contends that since she was not the owner of the car she could not consent to its being searched. The test is not who owned the car but rather whether Jane Balsiger had "such equal rights to the use and occupancy" as to give her the authority to consent to a search of the premises.[13] The well-established rule is that "where two persons have equal rights to the use or occupancy of premises either may give consent to a search and the evidence thus disclosed may be used against either of them."[14] And this rule is "equally applicable to an automobile and trailer as it is to real estate."[15] In the case before us, Jane Balsiger's "rights to use and occupancy" of the automobile were at least equal to those of the defendant. It was her car

[13] *Mears v. State, supra,* at page 439, this court stating: ". . . we do not here deal with the law of agency or the right of one person to waive another's rights. We deal rather with the question of whether the mother had such equal rights to the use and occupancy of the home as to give her authority to consent to a search of the premises. . . .

"On the record here, it is clear that the mother had at least equal rights to the use and occupancy of the premises which were searched with her consent. . . ."

[14] *Embry v. State* (1970), 46 Wis. 2d 151, 159, 174 N. W. 2d 521.
[15] *Id.* at page 159.

to use as she saw fit for the entire summer. She did no more than permit its use on a particular afternoon by defendant as an accommodation to him. Her at least equal rights to use and occupancy made it entirely proper for her to consent to a police search of the car. Evidence secured by reason of such valid consent search was properly in possession of the police, and defendant's motion to suppress such evidence as constitutionally inadmissible was properly denied.

The state would have us add that the examination of the attaché case, tobacco can and locked container (the lock fitted a key found on the person of the defendant) was proper as part of a proper custodial inventory search. It is true that this court has approved such custodial search of the person or automobile of a jailed person, and stated the reason to be to protect the police as custodians from claims that "personal property has disappeared from his car while he and the car were in police custody." [16] That is the law in this state and would be followed if it were here applicable. However, exactly as if a search warrant had been procured, the consent to search was secured to determine if the automobile contained evidence related to the commission of a crime.

[16] *Warrix v. State* (1971), 50 Wis. 2d 368, 376, 377, 184 N. W. 2d 189, this court stating: "The purpose and justification of a custodial search of a jailed person also applies to the accused's automobile which is taken into custody by the police for safekeeping while the accused is in jail custody. Many times claims against the police have been made by the accused that personal property has disappeared from his car while he and the car were in police custody. To protect the police from such claims, a custodial search and inventory may be made of the personal property in a car which can be easily removed. This type of search was approved in *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349, and *Chambers v. Maroney* (1970), 399 U. S. 42, 90 Sup. Ct. 1975, 26 L. Ed. 2d 419. As in any other search, the reasonableness depends upon the circumstances in each case. . . ." *See also: State v. Dombrowski, supra,* validity of same search upheld in *Cady v. Dombrowski* (1973), 413 U. S. 433, 93 Sup. Ct. 2523, 37 L. Ed. 2d 706.

Given a completely voluntary and entirely proper consent to a search of the car for such purpose, the police secured the right not only to seize the three containers, but also to examine their contents. Given valid consent or proper search warrant, the resultant right to seek and find included the right to examine the contents, as well as to seize the attaché case, the tobacco can and the locked container. The consent search of the automobile was a valid search for incriminating evidence, not an effort to become temporary custodians of items belonging to the defendant for safekeeping purposes. The search, the seizure, the examination of the contents of the three containers were entirely proper, once a voluntary consent to a search of the automobile was secured from one who had equal rights with the defendant to its use and occupancy.

*By the Court.*—Judgment of conviction on the charge of carrying a concealed and dangerous weapon, contrary to sec. 941.23, Stats., reversed and cause remanded for further proceedings consistent with this opinion. Judgment of conviction on the charge of transportation of dangerous drugs, contrary to sec. 161.30 (12) (d), Stats. 1969, affirmed.