STATE of South Dakota, Plaintiff and Respondent,

v.

Charles James WHITE, Defendant and Appellant.

No. 12291.

Supreme Court of South Dakota.

Argued April 18, 1978.

Decided Sept. 6, 1978.

Rehearing Denied Oct. 13, 1978.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

David L. Ganje, Aberdeen, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from a conviction for third degree burglary committed in violation of SDCL 22–32–9 and SDCL 22–3–3.[1] On his appeal, defendant contends: (1) That a directed verdict should have been granted because the evidence was insufficient to support the verdict; (2) certain cash register keys should not have been admitted in evidence; and (3) the trial court should have granted a change of venue from Roberts County because of prejudice within the county against native American Indians. We hold that the State's evidence, although circumstantial, allows reasonable inferences which sustain a rational theory of guilt. The jury verdict on appellate review is thus deemed to be based on sufficient evidence. We hold further that error, if any, in admitting the keys was harmless; and that the trial court did not abuse its discretion in refusing to grant a change of venue. We therefore affirm.

## FACTS

Gunner's Pub and Steak House, located four miles west of Sisseton, was burglarized some time prior to 4:00 a.m., February 9, 1977. After an unsuccessful attempt to break down a door, entry was apparently gained through a sizeable hole in one wall, made when two or three persons removed a heavy air conditioner from the wall.

Inside, a cash register was broken into, keys and change were taken, and beer was taken from the cooler. An oil lamp was broken, and oil was smeared on the wall and carpet. Beer and a large tape player were taken from inside the building out through the hole made in the wall.

About 4:00 a.m. a burglar alarm notified the Sisseton Police that a burglary was in progress at the Pub. A police officer arrived, following a drive at high speed from Sisseton, about two and one-half minutes after he received the alarm.

The first police officer to arrive discovered fresh tire tracks in the Pub parking lot. The tire tracks led directly to defendant's car, which was stuck in a snowbank on an isolated country road several miles from the Pub. Upon discovering the car, the officer radioed for help which soon arrived. Two officers and a co-owner of the Pub then attempted to remove the occupants from defendant's car. Defendant and his brother, who was in the driver's seat, refused to get out. The officers radioed for further help and two other officers and the other co-owner arrived within an hour.

Two of the officers then forcibly removed defendant from the front seat, passenger side of his car, over defendant's continued resistance. The officers placed defendant on the ground and handcuffed him. After defendant was taken to a police car, a man named German was removed from defendant's car and placed on the ground near the spot where defendant had been placed. A set of keys and some change were found in the snow in the area where the officers placed defendant and German while handcuffing them. The officers arrested all eight car occupants.

The keys were taken back to the Pub where one officer and a co-owner determined that they fit the cash register that

---

1. SDCL 22–32–9, under which defendant was charged, provided:

   A person breaking or entering at any time any building within the curtilage of a dwelling house but not forming a part thereof, or any building or part of any building, booth, tent, railroad car, vessel, vehicle as defined in § 32–14–1, or any structure or erection in which any property is kept, with intent to commit larceny or any felony, is guilty of burglary in the third degree.

   SDCL 22–3–3 provided:

   All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, are principals.

had been broken into. Later, with a search warrant, the officers discovered beer of the same brand missing from the Pub in the trunk of defendant's car.

The Pub building is constructed so that one inside cannot see toward Sisseton. Once out of the lights of the town, the headlights of cars leaving Sisseton at night can be seen from outside the Pub. Some of the beer taken out through the hole in the wall was left scattered outside; the tape player taken out was left on a pickup truck, which was parked nearby, owned by the Pub.

Defendant testified that he rode around the Sisseton area in his car most of the night of February 8. Part of the time he drove and later on he was a passenger. At least some of the persons in the car with defendant when he was arrested early on February 9 had been with him in the car since early evening of February 8. The people in the car had been drinking. Defendant testified that he drank 18 or 19 beers, fell asleep and has no recollection of the early morning hours of February 9. He does recall getting out of the car when it became stuck in the snowdrift. He joined in the unsuccessful attempt to free the car. He also recalls being taken out of the car when arrested. After his arrest he walked back to a patrol car.

Defendant was charged with third degree burglary in a February 9, 1977 complaint. The complaint was later dismissed, and an indictment was filed charging defendant with aiding and abetting in the burglary. Defendant was convicted by a jury of third degree burglary.

## ISSUES

The issues presented by defendant's appeal are:

*Issue One* : Was the evidence presented sufficient to support the verdict?

*Issue Two* : Was the chain of custody of the cash register keys sufficient to render them admissible against defendant?

*Issue Three* : Was defendant entitled to a change of venue?

## DECISION

*Issue One*

■ We conclude that the evidence presented was sufficient to support the verdict.

The State's evidence was clearly circumstantial. We have held, however, that circumstantial evidence and direct evidence are of equal weight, and that it is permissible to prove all the elements of a crime by circumstantial evidence. *State v. Rober,* 86 S.D. 442, 444, 197 N.W.2d 707, 709 (1972).

■ In reviewing a conviction on appeal, we must accept all the evidence on the record supporting the conviction, as well as all reasonable inferences which can be drawn from that evidence. No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a rational theory of guilt. *State v. Dietz,* S.D., 264 N.W.2d 509, 510 (1978); *State v. Best,* S.D., 232 N.W.2d 447, 457 (1975).

The trial court properly instructed the jury, by its instruction No. 11, that those who aid and abet in the commission of a crime are chargeable as principals:

A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, [sic] the commission of such crime, and one who thus aids and abets the commission of a crime such as charged although not present and not directly committing the act constituting the offense is an accessory before the fact and chargeable as a principal.

Defendant did not object to the instruction.

With these rules in mind, we review the evidence against defendant. The State's evidence shows a direct link between defendant's car and the robbery. Tire tracks led from the scene of the crime to defendant's car. The Pub cash register keys were found on the ground in the snow after defendant and another were removed from the car. There was beer in the trunk and in

the back seat of the car of the same brand as that taken from the Pub.

The State's evidence tended to show a joint effort in committing the burglary. The amount of activity at the burglary scene permits an inference that several persons participated. The fact that defendant and his party fled the scene before the first officers arrived (abandoning the tape player, and some of the beer) together with the fact that the burglars inside could not see toward Sisseton, supports an inference that one or more lookouts participated. It was shown that the occupants of the car were closely associated with each other. Defendant admitted that he had been with the occupants of his car for several hours before the burglary. He was found sitting in the front seat and his brother was in the driver's seat.

The evidence also points to defendant's individual participation in the crime. Keys and change from the burglarized property were found in the snow where defendant and German were subdued. Although an officer involved thought the keys probably came from German, the jury could have reasonably found otherwise. The car used in the crime was owned by defendant. Beer found in the trunk of that automobile was of the same type as that missing from the Pub. *See State v. Jahnz,* S.D., 261 N.W.2d 426 (1978). Finally, defendant resisted violently when he was arrested. This allows an inference that defendant was aware of his implication since ordinarily one being extricated from a car stuck in a snowbank in midwinter would have no reason to resist, particularly since he recognized the officers as police. *See State v. Wilson,* 173 N.W.2d 563 (Iowa 1970), and cases cited; 29 Am.Jur.2d *Evidence* §§ 278–279, at 328–329 (1967).

The totality of this evidence is sufficient to support the verdict. It was not necessary for the State to prove precisely how defendant participated. Since a rational hypothesis of guilt is supported by this evidence, the conviction must be affirmed. *State v. Dietz,* supra.

Defendant's explanation was that he had drunk large quantities of intoxicants and had passed out before the burglary. Defendant asserts that this version is "uncontroverted" and shows that he neither participated in the crime nor had the requisite specific intent to aid in the commission thereof. We have already concluded, however, that the State's evidence was sufficient to prove at least aiding and abetting.

■ Upon the issue of whether a specific intent to aid or abet had been proven beyond a reasonable doubt, the jury was properly instructed that they could consider whether from the evidence defendant was unable to form a specific intent because of his claimed state of intoxication. It was for the jury to weigh the circumstantial evidence as against defendant's testimony. The jury saw and heard all the witnesses and the issue of witness credibility, including a defendant's credibility is peculiarly within the jury's province in a trial by jury.

Defendant also argues that since only three sets of footprints were found leaving the Pub, not more than three persons participated in the burglary. However, the State presented evidence from which the jury could reasonably infer the need for one or more lookouts. Most importantly, the jury could find that defendant aided and abetted by permitting use of his car in the burglary. Because of the remote location of the Pub and the severe winter weather, the vehicle was practically indispensable to the carrying out of the burglary.

*Issue Two*

■ We conclude that the trial court did not err in refusing to suppress certain keys, but that even if there was error, it was harmless.

Defendant moved for suppression of the Pub cash register keys. Defendant's objection to introduction of the keys involves their custody after the night of the crime. Deputy Roger Wright testified that he held the keys for about a week, and then they were given to Sheriff Neil Long. The sheriff tried to get copies made, but could not. The keys had to be used every evening at

the Pub at closing time, and for that reason the sheriff went there for several nights. He then decided to return the keys to the Pub owners. The keys came into the custody of the deputy state's attorney shortly before the trial.

The keys involved here were not subject to alteration by tampering or contamination. *See State v. Herman,* S.D., 253 N.W.2d 454, 457 (1977). They appear to have been readily identifiable, since several officers and the Pub owners were able to identify them while on the stand. Defendant rested his motion on the fact that other keys could have been *substituted* for the ones found in the snow. Nothing in the evidence makes this probable. The Pub owners both testified to their custody of the keys. In any event, we believe that error if any in admission of the keys was harmless. The evidence that the keys found on the ground in the area where defendant was subdued fit the cash register in the Pub was admissible whether the keys were admitted or not. The keys themselves would thus add little to the State's case. *See Milburn v. State,* 50 Wis.2d 53, 183 N.W.2d 70 (1971) for a similar fact situation and result.

*Issue Three*

▇ We conclude that the trial court properly denied defendant's motion for a change of venue.

▇ When a defendant moves for a change of venue, he has the burden of establishing that he cannot get a fair trial in the county where he is charged. *State v. Austin,* 84 S.D. 405, 409–10, 172 N.W.2d 284, 286–87 (1969). The trial court has discretion in granting or denying the motion, and its determination will be disturbed only where this discretion is abused. *State v. Meservey,* 53 S.D. 60, 220 N.W. 139 (1928); *State v. Belt,* 79 S.D. 324, 111 N.W.2d 588 (1961).

There was very little evidence of unfavorable pre-trial publicity. Some of defendant's own witnesses testified that they had heard little about the burglary. Defendant sought, however, to prove that he could not get a fair trial by showing a general feeling of prejudice against native American Indians in Roberts County. We do not find it necessary to decide whether such "general prejudice" can be grounds for ordering a change of venue, since defendant did not meet his burden of showing that he could not receive a fair trial in Roberts County.

Defendant relied on the testimony of four witnesses. They testified to a feeling of prejudice in Roberts County. One Fern Mathias testified to religious segregation. An attorney from Webster testified that it might be difficult for an Indian to receive a fair trial in Roberts County. This testimony tended to prove that there may be some prejudice against Indians in Roberts County. It did not, however, establish that the prejudice was so pervasive that an impartial jury could not be found. As noted, this burden was on defendant.

The State offered testimony of various community leaders which tended to show that race relations had improved considerably over the two years prior to trial. The court thus had conflicting testimony before it. We cannot say that the balance tipped so heavily in favor of defendant that it was an abuse of discretion to deny the change of venue.

For the reasons given, the judgment is affirmed.

All the Justices concur.