STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael A. LITTLEJOHN, Defendant-Respondent.†

Court of Appeals

*No. 2007AP900–CR. Submitted on briefs November 2, 2007.
—Decided January 10, 2008.*

2008 WI App 45

(Also reported in 747 N.W.2d 712.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Stephen W. Kleinmaier*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William E. Schmaal*, assistant state public defender of Madison.

Before Vergeront, Lundsten and Bridge, JJ.

¶ 1. LUNDSTEN, J. This is a warrantless-vehicle-search-incident-to-arrest case. The State appeals a circuit court order suppressing evidence obtained from a search of Michael Littlejohn's car. The search occurred after Littlejohn exited his car, locked it, and walked away from it. We conclude that the search was a valid search incident to arrest under *New York v. Belton*, 453 U.S. 454 (1981), and *State v. Fry*, 131 Wis. 2d 153, 388 N.W.2d 565 (1986). Accordingly, we reverse the circuit court's order and remand for further proceedings.

### *Background*

¶ 2. Two police officers on patrol observed Littlejohn driving a car. Because they observed suspicious behavior, the officers followed Littlejohn's car until he parked in a small parking lot, where they pulled in behind him. Littlejohn exited the car and locked it. As Littlejohn was walking away from the car, the officers alerted Littlejohn to their presence. The officer who approached Littlejohn determined that Littlejohn's driver's license was revoked. Littlejohn was handcuffed and arrested.

478

¶ 3.   After securing Littlejohn in the rear of the patrol car, police searched the passenger compartment of Littlejohn's car. Police discovered a small baggie containing what appeared to be marijuana. They also found a white powdery substance that appeared to be cocaine. The officers then searched the car's trunk and found four gallon-sized baggies containing what appeared to be additional marijuana, a plastic bag containing what appeared to be more cocaine, and a digital scale.

¶ 4.   The State charged Littlejohn with several crimes, including possession of marijuana and cocaine, both with intent to deliver. Littlejohn moved to suppress the evidence found in his car. The circuit court granted the motion after concluding that the vehicle and trunk searches were illegal. For reasons not apparent from the court's written decision, the court declined to follow *Fry* and instead concluded that the search was unlawful because Littlejohn "[was] arrested when he [was] out of the vehicle." The State appeals. We reference additional facts as needed below.

### *Discussion*

¶ 5.   The only dispute on appeal is whether police conducted a lawful search of the passenger compartment of Littlejohn's car. Littlejohn does not argue that police improperly stopped or arrested him. Also, Littlejohn does not dispute the State's contention that, if we uphold the search of the passenger compartment, the evidence resulting from that search justifies the subsequent search of the vehicle's trunk. *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶ 9, 232 Wis. 2d 53, 606 N.W.2d 590 (Ct. App. 1999) ("An argument to which no response is made may be deemed conceded for purposes of appeal.").

479

¶ 6.  The State argues that this case is controlled by *Thornton v. United States*, 541 U.S. 615 (2004), a case in which a vehicle search was upheld as a proper search incident to arrest. Littlejohn responds that the vehicle-search-incident-to-arrest exception to the warrant requirement does not apply when, as here, the vehicle is not within the defendant's "immediate control." As explained below, the basic flaw in Littlejohn's argument is that he fails to acknowledge that the "immediate control" test, if it can be called a test, has evolved to a point where literal "immediate control" is not required. We conclude that the search must be upheld as a valid vehicle search incident to arrest. Rather than focus on *Thornton*, however, we place primary reliance on our supreme court's *Fry* decision.

¶ 7.  When reviewing a motion to suppress, we affirm the circuit court's findings of fact unless they are clearly erroneous. *State v. Pallone*, 2000 WI 77, ¶ 27, 236 Wis. 2d 162, 613 N.W.2d 568. We review *de novo*, however, the circuit court's application of constitutional principles to the facts. *Id.*

### A. Controlling Principles Of Law

¶ 8.  In *Chimel v. California*, 395 U.S. 752 (1969), the United States Supreme Court concluded that the need to prevent an arrestee from obtaining a weapon or destroying or concealing evidence justified a search incident to arrest of the area within that person's "immediate control." *Id.* at 762–63. Twelve years later, in *Belton*, the Court addressed vehicle searches incident to arrest. In essence, the *Belton* Court rejected a case-by-case approach—to determining whether concerns for officer safety or evidence destruction justified a vehicle search—in favor of a bright-line rule. *Belton*, 453 U.S. at 460. The Court held that "when a policeman

has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* (footnotes omitted). The Court added that the police "may also examine the contents of any containers found within the passenger compartment . . . whether [the container] is open or closed." *Id.* at 460–61.

¶ 9. In *Fry*, our supreme court applied the *Belton* bright-line rule to facts similar to those here. Fry was in a car stopped by police. *Fry*, 131 Wis. 2d at 157–58. Fry exited the car after the stop and walked over to the squad car, where police arrested him as he was standing between his vehicle and the squad car. *Id.* at 158. Fry was handcuffed, placed in a squad car, and guarded while police searched his vehicle, including a locked glove compartment. *Id.* at 156, 158–59. The search revealed a weapon, and Fry sought to suppress that evidence.

¶ 10. Upholding the search, the *Fry* court summarized and interpreted *Belton* as follows:

> The *Belton* rule is a simple and reasonable rule governing the search of an automobile after an arrest is made. *A police officer may assume under Belton that the interior of an automobile is within the reach of a defendant when the defendant is still at the scene of an arrest, but the defendant is not physically in the vehicle.* We cannot say as a matter of fact in all cases that a defendant never could regain access to the interior of an automobile after initially leaving the vehicle. Thus, we would seriously undermine police security if we adopted as a matter of constitutional fact the rule that the interior of an automobile never is within the reach of a suspect who is outside the vehicle at the arrest scene; such a rule would prohibit all automobile searches as an incident to arrest, unless the defendant

481

was allowed to remain in the automobile during the search, which increases the risk of danger to the officer. We cannot subscribe to such a limitation on the search incident to arrest rule.

The only other alternative to the *Belton* rule would be to permit searches on a case-by-case basis when the police believe that a suspect may escape from their control and regain access to an automobile. This alternative is unworkable, however, because such momentary escapes are not predictable.

*Fry*, 131 Wis. 2d at 174–75 (emphasis added). Of particular importance here, the *Fry* court rejected Fry's argument that the search of his vehicle was not "contemporaneous" to his arrest. The *Fry* court said:

*Belton* . . . treated a search in similar factual circumstances to be a contemporaneous incident of that arrest. *We agree with this conclusion because a search is contemporaneous with an arrest as long as the search begins immediately after the arrest and the defendant remains at the scene* . . . . Given a valid arrest, . . . nothing more need be shown to justify a search of an automobile incident to arrest.

*Id.* at 180 (emphasis added).

¶ 11.  *Fry* and subsequent case law interpreting *Fry* make clear what was implicit in *Belton*:  the government is not required to show in each case that the area searched was actually accessible to the arrestee at the time of the search. *See Fry*, 131 Wis. 2d at 174–75; *see also Pallone*, 236 Wis. 2d 162, ¶ 35 ("The search [in *Fry*] was lawful even though both defendants in *Fry* were handcuffed, confined in separate squad cars, and guarded by officers at the time of the search. The *Fry* decision thus did not gauge whether the defendant actually had access to the interior of the vehicle."

(citation omitted)); *State v. Murdock*, 155 Wis. 2d 217, 233–34, 455 N.W.2d 618 (1990) ("The *Fry* court refused to consider the defendant's actual accessibility to the interior of the car, including the locked glove compartment, based on the *Belton* Court's instruction that officers could assume that the interior of the auto remained within the arrestee's reach.").

## B. Littlejohn's Case

¶ 12.   The facts here have much in common with *Fry*. In particular, as in *Fry*, the search here took place immediately following an arrest that occurred outside the vehicle and after the defendant was handcuffed and secured in a police vehicle at the scene. In the remaining paragraphs, we address the circuit court's rationale and Littlejohn's arguments.

¶ 13.   In granting Littlejohn's suppression motion, the circuit court appeared to distinguish *Fry* on an incorrect basis. The circuit court stated as follows:

> *Chimel v. California*, 395 U.S. 752, coined the phrase "within the immediate control" of the arrestee. In *New York v. Belton*, 453 U.S. 454, the Supreme Court expanded the calibration of the scope of a valid search to include the passenger compartment of a vehicle and further extended it [to] any containers found within "the passenger compartment" of the vehicle, whether the container was open or closed. *California v. Acevedo*, 500 U.S. 565.
>
> It is true that a search was deemed lawful even though both defendants were handcuffed, [and] confined in separate squad car[s] in *Fry*, 131 Wis. 2d 153. In that case, the state did not have to show that the defendant had actual access to the interior of the vehicle. *However, there is ample authority that the*

483

*"immediate control test" does not apply if the defendant is arrested when he is out of the vehicle. U.S. v. Strahan, 984 F.2d 155; State v. Foster, 905 P.2d 1032.*

Thus, the circuit court seemed to view *Fry* as distinguishable because the police arrested Littlejohn after he exited his car. However, the defendant in *Fry* was also arrested after he had exited his vehicle. *See Fry*, 131 Wis. 2d at 158. Furthermore, the United States Supreme Court expressly held that "*Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." *Thornton*, 541 U.S. at 617. Accordingly, we reject the circuit court's rationale.

¶ 14. We turn our attention to Littlejohn's arguments.

¶ 15. Littlejohn points to the fact that he locked his car and asserts that our supreme court has invalidated a vehicle search incident to arrest when the vehicle was locked at the time of the arrest. But Littlejohn's primary support for this proposition is *Soehle v. State*, 60 Wis. 2d 72, 78, 208 N.W.2d 341 (1973), a pre-*Belton*, pre-*Fry* case. To the extent *Soehle* can be read for this proposition, it has been overruled by *Fry*. *Fry* involved the search of a locked glove compartment. *See Fry*, 131 Wis. 2d at 156. We perceive no reason under *Fry*'s rationale to distinguish between a locked glove compartment and a locked passenger compartment.

¶ 16. Littlejohn's primary argument is that the "*Belton-Thornton* warrant exception does not apply at all unless the motor vehicle to be searched was within the 'immediate control' " of the arrestee at the time of the arrest. In this regard, Littlejohn points out that the circuit court found that Littlejohn was "some distance"

from his vehicle when he was placed under arrest. Littlejohn also points to a testifying officer's agreement with the characterization that Littlejohn was "well a ways" from the driver's door of his car when placed under arrest. Littlejohn argues that the circuit court's finding, supported by this testimony, means Littlejohn's vehicle was beyond his "immediate control." We disagree.

¶ 17. First, we do not understand Littlejohn to be arguing that *Fry* is distinguishable because Littlejohn was farther away from the searched vehicle than the defendant in *Fry*. Still, as Littlejohn points out, the propriety of a vehicle search may turn on the arrestee's "temporal or *spatial* relationship to the car" at the time of the arrest and search. *See Thornton*, 541 U.S. at 622 (emphasis added). Consequently, we examine the "spatial relationship" issue and, because the circuit court ruled in Littlejohn's favor, we will assume fact finding, reasonably inferable from the record, that is most favorable to Littlejohn's view that the vehicle search was illegal. *See State v. Goyette*, 2006 WI App 178, ¶ 22 n.11, 296 Wis. 2d 359, 722 N.W.2d 731, *review denied*, 2007 WI 59, 299 Wis. 2d 325, 731 N.W.2d 635 (No. 2004AP2211–CR). Viewing the evidence in this light, it is not a reasonable inference that Littlejohn was a significant distance away from his car—within the meaning of the *Belton* line of cases—when he was contacted by police or when he was arrested. The officer who first contacted Littlejohn testified: "I made contact with [Littlejohn] as he exited the vehicle or just out of the car." Nothing in the suppression hearing testimony suggests that Littlejohn left the immediate area of his car. It is true that a different officer agreed with the statement that Littlejohn was "well a ways" from the driver's door of his car when placed under arrest

but, read in context, that characterization suggests no more than the fact that Littlejohn could not simply reach out and grab the door handle to gain entry to his car. This characterization is consistent with undisputed testimony that the squad car was "pulled in" behind Littlejohn's car and that Littlejohn was arrested between the squad car and Littlejohn's car. ·

¶ 18. Second, Littlejohn's argument is premised on the sort of literal reading of the term "immediate control" that has plainly been rejected in cases such as *Fry*. The *Fry* court pointed out that the *Chimel* "immediate control" test was an inquiry into whether a vehicle's passenger compartment was within " 'the area into which an arrestee might reach.' " *Fry*, 131 Wis. 2d at 167 (quoting *Belton*, 453 U.S. at 460 (quoting *Chimel*, 395 U.S. at 763)). As applied in *Fry*, this standard was met even though Fry was handcuffed, placed in a squad car, and guarded while police searched his locked glove compartment. *See Fry*, 131 Wis. 2d at 156, 158–59; *see also State v. Hamdia*, 135 Wis. 2d 406, 408–09, 400 N.W.2d 484 (Ct. App. 1986) (search of vehicle was lawful under *Fry* when "driver was arrested, placed in a squad car and remained on the scene while the search was taking place"). There is no dispute that the search of Littlejohn's vehicle began immediately after Littlejohn's arrest, and it cannot seriously be suggested that Littlejohn did not remain at the scene within the meaning of *Fry*.

## *Conclusion*

¶ 19. In sum, we see no meaningful distinction between Littlejohn's case and *Fry* for purposes of a *Belton* vehicle search incident to arrest. We understand that some of Littlejohn's arguments are made with an eye toward seeking supreme court review. However, we

are bound by *Fry*. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

*By the Court.*—Order reversed and cause remanded for further proceedings.